Filed 10/3/16; pub. & mod. order 10/27/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

NELLIE GAIL RANCH OWNERS
ASSOCIATION,

    Plaintiff, Cross-Defendant and
Respondent,

    v.

DONALD G. McMULLIN et al.,

    Defendants, Cross-complainants and
Appellants.

G051244

(Super. Ct. No. 30-2013-00653834)

O P I N I O N

        Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

        Everett L. Skillman for Defendants, Cross-complainants and Appellants.

        Neuland, Whitney & Michael, Frederick T. Whitney and Jane A. Gaba for Plaintiff, Cross-defendants and Respondent.

                *            *            *

Plaintiff, cross-defendant, and respondent Nellie Gail Ranch Owners Association (Nellie Gail) sued defendants, cross-complainants, and appellants Donald G. McMullin and Cynthia Jensen-McMullin (collectively, McMullins)[1] to quiet title and compel the McMullins to remove a retaining wall and other improvements they built without Nellie Gail's approval on more than 6,000 square feet of common area Nellie Gail owned adjacent to the McMullins' property. Following a bench trial, the trial court entered judgment for Nellie Gail and awarded Nellie Gail its attorney fees. The McMullins appeal, claiming the trial court should have quieted title in them or at least granted them an equitable easement over the disputed property. We disagree and affirm the trial court's judgment.

First, the McMullins contend Nellie Gail was equitably estopped to bring this quiet title action because it told the McMullins it would not pursue construction of the wall as a violation of the governing declaration of covenants, conditions, and restrictions (CC&R's) and instructed the McMullins to work with Nellie Gail's architect to develop and implement a landscaping, irrigation, and drainage plan to help screen the wall from view. The McMullins, however, forfeited this claim by failing to assert it at trial. Moreover, equitable estoppel requires the party asserting it to be ignorant of the true facts and to justifiably rely on the conduct or statements of another who has knowledge of those facts. The evidence supports the conclusion Nellie Gail did not know all of the facts and it made its statements after the McMullins knowingly constructed the retaining wall and other improvements on Nellie Gail's property without obtaining the required written approvals from Nellie Gail. The McMullins therefore could not justifiably rely on Nellie Gail's statements even if they did not forfeit the claim.

---

[1] We also refer to the McMullins individually by their first names to avoid confusion. No disrespect is intended.

2

Second, the McMullins contend the trial court erred when it rejected their adverse possession claim because the McMullins failed to pay property taxes on the disputed property. The McMullins contend the disputed property had no value, and therefore they were excused from establishing that essential element. The McMullins were excused from paying property taxes only if they established no property taxes were levied or assessed on the disputed property during the relevant five-year period. Substantial evidence, however, supports the conclusion the disputed property had a value and property taxes were levied against it, but were assessed to the individual property owners in the community consistent with the law concerning property taxes on common areas owned by homeowners associations.

Next, the McMullins contend the trial court erred in granting Nellie Gail a mandatory injunction authorizing it to remove the retaining wall and other improvements at the McMullins' expense, rather than requiring Nellie Gail to accept monetary damages as compensation for an equitable easement that would allow the McMullins to maintain the wall and improvements. A property owner generally is entitled to a mandatory injunction requiring an adjacent owner to remove an encroachment, but a trial court has discretion to deny an injunction and grant an equitable easement if the encroacher acted innocently and the balancing of the hardships greatly favor the encroacher. Substantial evidence supports the trial court's conclusion the McMullins were not innocent encroachers and therefore the court properly granted Nellie Gail an injunction.

Finally, the McMullins challenge the trial court's award of attorney fees to Nellie Gail, but we lack jurisdiction to review that award because the court made it after entry of judgment and the McMullins neither identified the award in their notice of appeal nor filed a separate notice of appeal. We therefore dismiss that portion of the appeal challenging the fees award.

3

# I

## FACTS AND PROCEDURAL HISTORY

Nellie Gail Ranch is a 1,407-unit residential planned development on approximately 1,350 acres in Laguna Hills, California. Nellie Gail is the homeowners association the developer formed to own the common areas and administer the community's CC&R's. The community has horse trails, an equestrian center, parks, tennis courts, and other common areas Nellie Gail manages.

In December 2000, the McMullins purchased a home in Nellie Gail Ranch located at the end of a cul-de-sac on a hilltop with canyon views. The back of their property slopes down towards and abuts lot 274, which is an approximately 15-acre canyon lot owned by Nellie Gail and dedicated as open space. One of the community's horse trails runs across lot 274 directly behind the McMullins' property. The back left corner of the McMullins' property also touches lot 273, which is an approximately 5-acre lot owned by Nellie Gail that is home to the community's largest park.

The McMullins' backyard has three retaining walls used to provide level, useable space because of the sloping nature of their property. There is a short three-foot retaining wall that separates their house and patio from their grass area. A second, nearly six-foot retaining wall separates their house, patio and grass area from a lower area where they have a swimming pool and deck. The third retaining wall is a six-foot wall that separates all of these areas from the slope that leads to lots 273 and 274. Beyond this final retaining wall is a wrought iron fence that encircles the entire back portion of the McMullins' property. The area between the final retaining wall and the wrought iron fence has a considerable slope.

Nellie Gail's CC&R's and its Architectural Review Committee Guidelines required all homeowners to obtain written approval from the Architectural Review Committee (Review Committee) before constructing or making significant alterations to

4

any improvements on their property. In January 2008, the McMullins applied to the Review Committee to replaster their swimming pool, redo the pool deck, construct a bar area near the pool, install a solar heater for the pool, replace the wrought iron fence with an eight-foot retaining wall, backfill behind that new wall, install a large patio slab or sports court and garden in the flat area created, and build a staircase from the pool area down to the flat area behind the new retaining wall. The application included a site plan Donald prepared showing the location of the proposed improvements, and depicting the new retaining wall would be constructed in the same location as the existing wrought iron fence. The plan identified the property lines between the McMullins' property and their neighbors on either side, but did not identify the rear property line between the McMullins' property and lot 274. The plan included two dashed lines that extended from the existing six-foot retaining wall that surrounded the back yard to the side property lines, but did not explain what those lines represented. Nellie Gail later discovered these unlabeled, dashed lines showed the rear property line's location.

In February 2008, the Review Committee sent the McMullins' a letter denying their application and explaining how it failed to comply with the CC&R's and the committee's guidelines. The letter also informed the McMullins that "a fully dimensioned site plan showing property lines, easement areas, setbacks and fully defined landscaping and drainage will be needed [for any future applications]."

Two weeks later, Donald prepared and resubmitted an application with a revised, more detailed site plan. That plan again represented the new retaining wall would be constructed in the same location as the existing wrought iron fence, and also identified the property lines between the McMullins' property and their neighbors, but not the property line between the McMullins' property and Nellie Gail's lot 274. The plan also included the same dashed lines extending from the end of the existing, six-foot retaining wall without explaining what those lines represented. In March 2008, the Review Committee sent the McMullins a letter denying the revised application and

explaining the reasons for the denial. This letter again notified the McMullins that any future application must be accompanied by "a fully dimensioned site plan showing property lines" and other necessary information "from a licensed Civil Engineer." The committee's letter also suggested the McMullins submit a new application limited to just the pool-related improvements if they wanted to get started on their project.

The McMullins followed the Review Committee's suggestion and submitted a new application limited to the pool-related improvements only, which included a staircase from the pool area down to the slope behind the existing six-foot retaining wall. In April 2008, the Review Committee sent the McMullins a letter approving this application subject to a few conditions, including one that prohibited the McMullins from modifying the grade on the slope behind their existing retaining wall.

Almost a year later, Cynthia went to the Review Committee's office to submit a new application and plans for the retaining wall and sports court. She spoke with Sandi Erickson, the Review Committee's community relations person. Cynthia testified Erickson said the plans were not necessary because the McMullins' application already was approved. Cynthia asked Erickson to double check her information, and after looking on Nellie Gail's computer system, Erickson again told Cynthia she did not need to submit the plans because they were approved. Erickson stopped working for Nellie Gail a few weeks after this conversation, and she did not testify at trial. Cynthia did not obtain written confirmation of this conversation or the Review Committee's alleged approval for the retaining wall.

In May 2009, the McMullins obtained a building permit for the retaining wall from the City of Laguna Hills and began construction. None of the parties could explain how the McMullins obtained this permit when they did not have Nellie Gail's written approval for construction of the wall. The appellate record only includes a copy of the permit; it does not include the application the McMullins submitted to the city.

6

Jeff Hinkle began working as Nellie Gail's Facilities and Compliance Manager in June 2009. That same month, he received a phone call from a resident informing him construction trucks were on the horse trail near the McMullins' property. Hinkle spotted a cement truck and a pickup truck on the trail directly behind the McMullins' property. After speaking with Nellie Gail's general manager and reviewing its computer files to confirm the McMullins had obtained an approval to perform work on their property, Hinkle returned to the horse trail to speak with the McMullins' contractor and Cynthia. In confirming the McMullins had an approval, Hinkle did not look at the plans or determine the type of work the McMullins were authorized to perform; he simply confirmed they had obtained some approval. Hinkle informed the contractor and Cynthia they needed a trail permit to have vehicles or equipment on the horse trail, and the contractor returned to Nellie Gail's office with Hinkle to obtain the permit. During these visits to the trail near the McMullins' property, Hinkle did not observe any construction work in progress. The wall had not been constructed, and he did not see any excavations for the wall footings.

In August 2009, Hinkle was in the park near the McMullins' property and noticed they were building a wall at the back of the property. He returned to Nellie Gail's office to check on the nature of the improvements the McMullins were authorized to construct. He discovered the McMullins' approvals authorized work on their pool, the installation of solar panels on the slope behind the existing retaining wall, and a staircase from the pool down to the slope. He noticed one of the conditions for the approval prohibited the McMullins from modifying the slope and the approval did not authorize a new retaining wall. Hinkle then wrote the McMullins a letter directing them to immediately stop all work and to contact Nellie Gail to discuss their project.

At this point, the wall and related improvements essentially were completed and the McMullins were waiting for the city to sign off on the project. The work that remained was backfilling against the wall on the side facing lot 274, some minor finish

grading, and completing the irrigation, drainage, and landscaping. Creation of the flat surface behind the wall and the sports court were complete, and a wrought iron fence had been installed on top of the new retaining wall.

After receiving the cease and desist letter, the McMullins stopped work and began discussions with Nellie Gail about what was necessary to complete the project. Nellie Gail informed the McMullins their architect would inspect the wall and the McMullins should submit an application and detailed plans to the Review Committee for possible approval. The McMullins submitted the application and plans to the Review Committee on September 30, 2009. As with all previous applications, Donald prepared the site plan and failed to identify the location of the rear property line between the McMullins' property and Nellie Gail's lot 274. The site plan again included the unlabeled, dashed lines that extended from the original six-foot retaining wall that Nellie Gail later learned was the rear property line.

On October 15, 2009, the Review Committee sent the McMullins a letter denying their application for the retaining wall as constructed. The letter explained why the application was denied and what additional information the committee needed from the McMullins before it would approve the wall, including a dimensioned site plan by a licensed surveyor that depicted the easement for the trail and the wall. The McMullins therefore hired a surveyor to conduct a survey and prepare a plan showing the relationship between the horse trail and the retaining wall. Donald told the surveyor not to include the rear property line on this plan. The McMullins submitted this plan to Nellie Gail before the end of October.

On November 10, 2009, Hinkle sent the McMullins an e-mail explaining that many of the problems concerning the wall could have been avoided if the McMullins' plans had identified their rear property line. The e-mail also stated, "In any case, the wall was built and is on [Nellie Gail's] property. Let's move forward on how we can make this an amicable and reasonable resolution." A week later, Nellie Gail's

8

board of directors considered in closed session how to address the issues surrounding the McMullins' wall. The board voted and "agree[d] not to pursue the installation of the McMullin's wall as a violation, and [to] direct the [Review Committee] to decide on appropriate screening options." On December 9, 2009, Nellie Gail sent the McMullins a letter informing them of the board's vote and instructing them to meet with Nellie Gail's architect to finalize a landscaping, irrigation, and drainage plan to help screen the wall.

After receiving this letter, the McMullins met with Nellie Gail's architect and developed a landscaping, irrigation, and drainage plan for the areas on both sides of the wall. In January 2010, the Review Committee approved this plan and the McMullins implemented it at a cost of approximately $20,000. This expenditure was in addition to the approximately $150,000 they already spent to construct the retaining wall, sports court, and other improvements. Neither Nellie Gail nor the Review Committee, however, ever approved any of these improvements other than the landscaping, irrigation, and drainage relating to the screening for the wall.

In July 2010, the city sent a letter to both the McMullins and Nellie Gail explaining the wall was constructed entirely on Nellie Gail's property and did not fully comply with the city's requirements regarding the wall's height and the slope adjacent to the wall. The city further informed the parties the wall could not remain in its current condition—either Nellie Gail must grant its approval for the wall and the wall must be brought into compliance with the city's requirements, or the wall must be removed.

Based on the city's letter, Nellie Gail wrote the McMullins in November 2010 to inform them the wall could not remain in its current, unapproved condition and the two sides should try to resolve the situation. Nellie Gail's letter explained the McMullins never provided any plans that showed the location of the property line between the McMullins' property and Nellie Gail's lot 274 despite the Review Committee's repeated requests. Nellie Gail therefore requested that the McMullins obtain a professional survey showing all of the McMullins' improvements in

9

relation to the property line between the two properties, and that the parties engage in alternative dispute resolution after the survey.

When the McMullins did not immediately respond, Nellie Gail hired its own surveyor to locate the property line. Nellie Gail's surveyor completed his survey in March 2011, and determined the original six-foot retaining wall was constructed on the property line and the new retaining wall and improvements were built almost entirely on Nellie Gail's property. The area between the property line and the new retaining wall totaled more than 6,100 square feet of lot 274 (hereinafter, Disputed Property) and increased the total size of the McMullins lot from approximately 16,400 square feet to more than 22,500 square feet. Contrary to the McMullins' repeated representations in their applications, Nellie Gail's surveyor determined the retaining wall was built well outside the location of the previous wrought iron fence and enclosed more than 2,000 square feet of lot 274 that were not enclosed by the previous fence. In January 2012, the McMullins hired a surveyor to determine the relationship between the property line and the retaining wall. Their surveyor confirmed the retaining wall enclosed more than 6,100 square feet of Nellie Gail's lot 274, and the parties stipulated at trial there was no significant difference between these two surveys.[2]

After receiving these surveys, the parties continued to explore possible resolutions for the problem. In July 2012, Nellie Gail conducted a vote of its members on whether to sell the Disputed Property to the McMullins based on an appraisal they obtained. The members overwhelmingly voted not to sell the Disputed Property to the McMullins. Of the 572 member who voted, only 142 voted in favor of the sale.

_____

[2] The only area of disagreement was whether the Disputed Property included a few square feet of lot 273. Nellie Gail's surveyor concluded it did not, but the McMullins' surveyor concluded it did. Whether the Disputed Property included a portion of lot 273 is not significant to our analysis and the trial court nonetheless quieted title to both lots in Nellie Gail's name. We therefore refer to lot 274 only for ease of reference.

10

In June 2013, Nellie Gail sued the McMullins to quiet title to the Disputed Property in its name, ask for an injunction requiring the McMullins to remove the retaining wall and all other improvements from the Disputed Property, and request a declaratory judgment declaring the parties' rights and duties under the CC&R's. The McMullins answered and filed a cross-complaint against Nellie Gail seeking to quiet title to the Disputed Property in their name and a declaratory judgment regarding their rights and duties concerning the Disputed Property. They alleged they either acquired title to the Disputed Property through adverse possession or a prescriptive, implied, or equitable easement over the Disputed Property.

Following a six-day bench trial, the trial court entered judgment for Nellie Gail on all claims. The judgment declared the McMullins breached the CC&R's by failing to accurately depict their property lines on the plans they submitted to the Review Committee, constructing the retaining wall and other improvements without the Review Committee's approval or the city's permission, and constructing the retaining wall and improvements on Nellie Gail's property. The judgment further declared the McMullins did not acquire title to the Disputed Property by adverse possession because they failed to establish the essential elements of their claim, and the McMullins likewise did not acquire a prescriptive or equitable easement because they failed to establish the requisite elements. The court therefore quieted title to lot 274 and lot 273 in Nellie Gail and issued a mandatory injunction authorizing Nellie Gail to do the following at the McMullins' expense: (1) remove the sports court; (2) cut down and remove the retaining wall to the existing grade in a manner that meets the city's approval; and (3) "address the grade of the ground on the entirety of Lot 274 and Lot 273 in order to restore the area to a gradual open space slope and to restore the plantings on said Lot 274 and Lot 273 to native California vegetation." Neither side requested a statement of decision.

Shortly after the trial court entered judgment, Nellie Gail filed a motion for attorney fees and costs. The court granted that motion, awarding approximately

11

$187,000 in attorney fees and $10,000 in costs. Following the trial court's ruling granting the fee motion, the McMullins filed their notice of appeal from the trial court's judgment. The trial court later entered an amended judgment adding the attorney fees and costs to the judgment.

II

DISCUSSION

A. *We Infer the Trial Court Made All Necessary Findings Supported by Substantial Evidence Because the Parties Failed to Request a Statement of Decision*

"Upon a party's timely and proper request, [Code of Civil Procedure] section 632 requires a trial court to issue a statement of decision following 'the trial of a question of fact by the court.' The statement must explain 'the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial. . . .'" (*Acquired II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 (*Acquired II*); see Code Civ. Proc., § 632.)[3] If the parties fail to request a statement of decision, the trial court is not required to provide one. (*Ibid.*)

"A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. [Citations.] This doctrine 'is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.'" (*Acquired II*, *supra*, 213 Cal.App.4th at p. 970.)

---

3 All statutory references are to the Code of Civil Procedure unless otherwise stated.

12

Here, it is undisputed the trial court conducted a six-day bench trial to determine the parties' rights, duties, and interests in the Disputed Property. Similarly, no one disputes the parties did not request, and the court did not prepare, a statement of decision explaining the factual and legal basis for the court's decision. We therefore infer the court made factual findings favorable to Nellie Gail on all issues necessary to support the judgment, and we review those findings under the substantial evidence standard. (*Acquired II*, *supra*, 213 Cal.App.4th at p. 970; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.) We more fully address the specific standard of review applicable to each of the McMullins' challenges in our discussion below.

The McMullins contend the doctrine of implied findings does not apply because all relevant facts were undisputed, and therefore the trial court did not resolve any factual issues in reaching its decision. Thus, the McMullins conclude they have raised only legal issues subject to de novo review. We disagree. There are many disputed factual issues underlying the court's judgment. For example, the trial court had to determine the extent of the parties' knowledge about the location of the McMullins' rear property line, whether the McMullins deliberately failed to identify their rear property line on their submissions to Nellie Gail, and numerous other issues. Moreover, we do not independently review factual issues unless the facts are undisputed *and* no conflicting inferences can be drawn from the facts. (*Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1521; *DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 270.) The McMullins failed to establish no conflicting inferences could be drawn from the evidence presented at trial.

B. *The McMullins Forfeited Their Equitable Estoppel and Statute of Limitations Defenses by Failing to Assert Them at Trial*

The McMullins contend the trial court erred in quieting title to the Disputed Property in Nellie Gail because two of their defenses defeated Nellie Gail's quiet title

13

claim as a matter of law. First, the McMullins contend equitable estoppel barred Nellie Gail's claim. Second, they contend section 318's five-year limitations period bars Nellie Gail's claim. The McMullins forfeited these defenses by failing to assert them at trial.

"As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." (Eisenberg et al., Cal. Practice Guide: Civil Appeal & Writs (The Rutter Group 2015) ¶ 8:229; p. 8-167.) "New theories of defense, just like new theories of liability, may not be asserted for the first time on appeal." (*Bardis v. Oates* (2004) 119 Cal.App.4th 1, 13-14, fn. 6.) "'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . . Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.'" (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519.)

In their answer, the McMullins alleged boilerplate defenses based on equitable estoppel and the statute of limitations. Similarly, in the joint list of controverted issues the parties filed on the eve of trial, the McMullins identified these defenses as two of their 19 controverted issues for trial. The McMullins, however, thereafter abandoned those defenses by failing to raise either of them at trial.

The trial brief the McMullins filed neither argued these defenses nor identified them as issues for the trial court to decide. In his opening statement, the McMullins' trial counsel stated he would present evidence to show the McMullins were entitled to maintain the retaining wall and other improvements on the Disputed Property based on three theories—adverse possession, prescriptive easement, and equitable easement. Counsel failed to mention equitable estoppel or the statute of limitations as a

14

basis for the court to deny Nellie Gail's quiet title claim. Similarly, in his closing argument, counsel argued the court should quiet title in the McMullins or grant them an exclusive easement over the Disputed Property based on adverse possession, prescriptive easement, or equitable easement. At no time during trial did the McMullins assert that Nellie Gail was equitably estopped to bring a quiet title claim or that the statute of limitations barred Nellie Gail's claim.

The McMullins fail to cite anywhere in the trial record where they mentioned the statute of limitations, and they cite just one page of the reporter's transcript where their counsel uttered the words "equitable estoppel" during closing argument. This isolated utterance, however, is not sufficient to preserve the issue for appeal because the McMullins' counsel did not utter those words as part of an argument that Nellie Gail was equitably estopped to assert a quiet title claim. Indeed, it appears as though the McMullins' counsel may have misspoke by mentioning equitable estoppel because he uttered that phrase when urging the trial court to grant an equitable easement, which, as explained below, is a separate doctrine that allows a landowner who constructed an improvement on an adjacent owner's property to defeat that owner's injunction request based on a balancing of the hardships or conveniences. (See, e.g., *Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1008-1009 (*Tashakori*).)

Nonetheless, assuming the McMullins' trial counsel meant to argue equitable estoppel, substantial evidence supports the implied finding the McMullins failed to establish the essential elements necessary for equitable estoppel. "'"'A valid claim of equitable estoppel consists of the following elements: (a) a representation or concealment of material facts (b) made with knowledge, actual or virtual, of the facts (c) to a party ignorant, actually and permissibly, of the truth (d) with the intention, actual or virtual, that the ignorant party act on it, and (e) that party was induced to act on it.'" . . . Other, more general formulations have been proposed [citation], but all formulations require that the conduct of the party to be estopped induced action on the part of the

15

complaining party. 'Such causation is essential to estoppel. . . .'" (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1149.) "'""[T]he existence of an estoppel is generally a question of fact for the trier of fact, and ordinarily the [fact-finder's] determination is binding on appeal unless the contrary conclusion is the only one to be reasonably drawn from the facts.'"" (*J.P. v. Carlsbad Unified School Dist.* (2014) 232 Cal.App.4th 323, 333.)

As the basis for their equitable estoppel claim, the McMullins cite Nellie Gail's December 2009 letter and January 2010 e-mail, informing the McMullins the board of directors decided not to pursue the unauthorized construction of the retaining wall and related improvements as a violation of the CC&R's, and instructing the McMullins to work with Nellie Gail's architect to develop a landscaping plan to screen the wall from view. In reliance on these letters, the McMullins assert they spent $20,000 to develop and implement a landscaping plan for the area surrounding the retaining wall. The evidence simply is insufficient to equitably estop Nellie Gail from bringing a quiet title claim as a matter of law.

The McMullins ignore that these communications and their reliance on them occurred well after the retaining wall was constructed, and therefore they could not justifiably have relied on them in spending approximately $150,000 to construct the wall and related improvements that did not include the landscape screening, irrigation, and drainage around the wall. Moreover, the evidence supports the implied finding Nellie Gail did not know all of the essential facts because it was unaware of the extent of the McMullins' encroachment onto its property when it voted not to pursue the wall as a CC&R's violation and approved the plans to screen the wall. The evidence also supports the implied finding the McMullins were not ignorant of the facts because they concealed their rear property line's location from Nellie Gail and knowingly started construction without Nellie Gail's written approval.

16

Specifically, the record includes testimony from a member of Nellie Gail's board of directors who participated in the vote not to pursue the retaining wall as a CC&R's violation. That board member testified the board simply was looking for an amicable resolution to the situation, but did not know where the McMullins' rear property line was or the extent of the encroachment when it voted. The record also reveals the trial court found the McMullins were not "innocent" in their construction of the wall because (1) they intentionally failed to identify their rear property line in each of the many plans they submitted despite Nellie Gail's repeated request for them to identify property lines; (2) they knew where the property line was located because all of their plans included a dashed, unlabeled line that approximated the rear property line's location, and (3) they started construction based on an ambiguous oral statement from a Nellie Gail employee about the approval of their plans when they knew written approval from the Review Committee was required before construction could begin. Moreover, the city later informed both parties the wall was on Nellie Gail's property and it could not remain there unless Nellie Gail expressly authorized it to remain on its property. This evidence supports the implied finding the trial court rejected the McMullins' equitable estoppel defense to the extent they did not forfeit it.[4]

---

[4] We also note the McMullins asserted a quiet title claim in their cross-complaint that would support the trial court's judgment quieting title to the Disputed Property in Nellie Gail. The McMullins contend Nellie Gail was equitably estopped to bring its quiet title action, but did not assert Nellie Gail was equitably estopped from defending the McMullins' quiet title claim or that the trial court could not quiet title in Nellie Gail based on the McMullins' claim.

17

C.       *The McMullins Failed to Establish They Acquired Any Interest in the Disputed Property by Adverse Possession*

The McMullins contend the trial court erred by failing to sustain their quiet title claim to the Disputed Property because they presented evidence sufficient to establish a claim to title by adverse possession.  We disagree.[5]

To establish they acquired title by adverse possession the McMullins must show (1) they possessed the Disputed Property under a claim of right or title; (2) they actually, openly, and notoriously occupied the Disputed Property in a manner that gave reasonable notice to Nellie Gail; (3) their possession and occupancy was adverse and hostile to Nellie Gail; (4) they continually possessed and occupied the Disputed Property for five years; and (5) they paid all property taxes levied and assessed on the Disputed Property during that five-year period.  (*Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1054.)

The trial court found the McMullins' adverse possession claim failed because they did not pay any property taxes on the Disputed Property.[6]  (See *Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1260 ["The adverse claimant's failure to pay taxes on the land he claims is fatal to his claim"].)  The payment of property taxes is a statutory

---

[5]       The McMullins do not separately argue they were entitled to an interest in the Disputed Property by adverse possession.  Rather, they raise their adverse possession argument as the basis for their contention Nellie Gail's quiet title action was time-barred.  We nonetheless consider the argument on its merits because the governing five-year limitation period on a property owner's quiet title action against an adverse possessor is triggered when an adverse possessor begins to use and occupy the property to acquire title.  An adverse possessor who claims the legal owner's quiet title action is time barred therefore bears the burden to establish all elements of an adverse possession claim to show the quiet title claim is time barred. (*Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1095-1096.)

[6]       The trial court also found the McMullins failed to establish their possession and occupation of the Disputed Property was "open, notorious, and hostile," but we need not address this finding because substantial evidence supports the court's finding the McMullins failed to pay property taxes.

18

requirement for adverse possession. (§ 325, subd. (b).) For section 325 purposes, a tax is levied when the county board of supervisors fixes the tax rate and orders payment of the taxes. A tax is assessed when the county assessor prepares the annual roll listing all properties subject to taxation and their assessed value. (*Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82, 90 (*Hagman*); see *Allen v. McKay* (1898) 120 Cal. 332, 334.)

The party claiming an interest based on adverse possession bears the burden to show either that "no taxes were assessed against the land or that if assessed he paid them." (*Gilardi v. Hallam* (1981) 30 Cal.3d 317, 326; *Glatts v. Henson* (1948) 31 Cal.2d 368, 372.) Section 325 requires that payment of the property taxes must be "established by certified records of the county tax collector." (§ 325, subd. (b).) "Ordinarily, when adjoining lots are assessed by lot number, the claimant to the disputed portion cannot establish adverse possession because he cannot establish [he paid taxes on the portion of the adjoining property he occupied and possessed]." (*Gilardi*, at p. 326.)

The McMullins do not dispute they paid no property taxes on the Disputed Property. Instead, citing *Hagman*, they contend they were not required to pay taxes to establish their claim because the larger parcel that included the Disputed Property—lot 274—had no value, and therefore no taxes were levied and assessed against it. To show the Disputed Property had no value, the McMullins point to the recorded quitclaim deed transferring lot 274 to Nellie Gail in 1984 and recent property tax statements.

According to the McMullins, the recorded quitclaim deed showed lot 274 had no value because the deed states no documentary transfer tax was required for the transfer because the consideration was less than $100. The McMullins contend the tax statements show lot 274 had no value because the statements did not show the county levied and assessed any specific property taxes against lot 274 and did not identify a specific value for the parcel. This evidence, however, is not sufficient to meet the McMullins burden to show no taxes were levied and assessed.

19

In *Hagman*, the adverse possession claimant presented evidence showing the holder of legal title applied for and obtained a property tax exemption for the property at issue during the entire period of adverse possession because the title holder was a religious organization that used the property for educational purposes. (*Hagman*, *supra*, 215 Cal.App.4th at p. 86.) That exemption precluded the county from levying or assessing any property taxes against the property. The Court of Appeal therefore concluded the claimant was not required to pay property taxes to establish adverse possession because no property taxes were assessed or levied on the property during the period of adverse possession. (*Id.* at pp. 90-91.)

Here, the McMullins rely on evidence that fails to show lot 274 was exempt from property taxes, lot 274 had no value, or no property taxes were levied and assessed on lot 274. The quitclaim deed transferred lot 274 from Nellie Gail's original developer to Nellie Gail and dedicated the parcel as open space. Nowhere does the deed state lot 274 has no value and the McMullins do not cite any authority to support their assumption that the absence of any documentary transfer tax on this type of transfer establishes the property has no value. Moreover, at trial, the parties agreed lot 274 and the Disputed Property had value, but merely disagreed on what that value was. Similarly, although the property tax statements showed Nellie Gail was not billed for any property taxes on lot 274, and did not identify a specific value for that parcel, the statements stated, "common area values separately assessed." (Capitalization omitted.)

That statement is consistent with Revenue and Taxation Code section 2188.5's assessment of property taxes for common areas owned by homeowners associations like Nellie Gail. That section provides that all parcels owned by individual homeowners that make up the association are assessed property taxes based not only on the value of their separate lots, but also the value of their proportionate, undivided share of all common areas owned by their homeowners association. (Rev. & Tax. Code,

20

§ 2188.5, subd. (a)(1).)[7]  Common areas like lot 274 therefore have value and property taxes are levied against them; those taxes are billed to and paid by the individual homeowners.  (*Lake Forest Community Association v. County of Orange* (1978) 86 Cal.App.3d 394, 397 ["pursuant to Revenue and Taxation Code section 2188.5, the real property taxes levied against the clubhouse and the parcel of land on which it is located are assessed to the separately owned residential properties owned by the Association's members"].)

The McMullins argue these authorities do not apply to lot 274 because there is no evidence to show the developer or Nellie Gail properly annexed lot 274 to make it part of the common areas governed by Nellie Gail under the CC&R's.  At trial, however, the McMullins stipulated that lot 274 is "'Common Area'" as defined in Nellie Gail's CC&R's.  Having tried the case based on that stipulation, the McMullins may not seek to repudiate it on appeal.  (See *People v. Pijal* (1973) 33 Cal.App.3d 682, 697 ["It is, of course, well established that the defendant is bound by the stipulation or open admission of his counsel and cannot mislead the court and jury by seeming to take a position on issues and then disputing or repudiating the same on appeal"].)

The McMullins therefore failed to meet their burden to show they were not required to pay any property taxes on the Disputed Property, and the trial court properly found their adverse possession claim failed as a result.

---

[7]      In pertinent part, Revenue and Taxation Code section 2188.5, subdivision (a)(1), provides as follows:  "[W]henever real property has been divided into planned developments as defined in Section 11003 of the Business and Professions Code, the interests therein shall be presumed to be the value of each separately owned lot, parcel, or area, and the assessment shall reflect this value, which includes all of the following:  [¶]  (A) The assessment attributable to the value of the separately owned lot, parcel, or area and the improvements thereon.  [¶]  (B) The assessment attributable to the share in the common area reserved as an appurtenance of the separately owned lot, parcel, or area."

D.      *The Trial Court Did Not Abuse Its Discretion in Granting Nellie Gail an Injunction Against the McMullins' Encroachment*

The McMullins contend the trial court erred in granting Nellie Gail a mandatory injunction that requires them to pay for removing the visible portions of the retaining wall and restoring the surrounding area to its natural condition. According to the McMullins, the trial court could not grant the equitable remedy of an injunction without first finding Nellie Gail had no adequate remedy at law, and the record lacks substantial evidence to support the finding monetary damages was an inadequate legal remedy. The McMullins misconstrue the governing legal standards, and we conclude substantial evidence supports the trial court's decision.

In an action between adjoining landowners based on the defendant constructing an improvement on the plaintiff's property, the plaintiff generally is entitled to a mandatory injunction requiring the defendant to remove the encroachment. (*Brown Derby Hollywood Corp. v. Hatton* (1964) 61 Cal.2d 855, 858 (*Brown Derby*); *Salazar v. Matejcek* (2016) 245 Cal.App.4th 634, 649 (*Salazar*).) Under the doctrine of "balancing of conveniences" or "relative hardships," a trial court has discretion to deny an injunction and instead compel the plaintiff to accept damages as compensation for a judicially-created easement that allows the defendant to maintain the encroaching improvement. (*Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19-20 (*Shoen*); *Tashakori*, *supra*, 196 Cal.App.4th at pp. 1008-1009; *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 265 (*Linthicum*).)

"When a trial court refuses to enjoin encroachments which trespass on another's land, 'the net effect is a judicially created easement by a sort of non-statutory eminent domain.' [Citations.] However, the courts are not limited to judicial passivity as in merely refusing to enjoin an encroachment. Instead, in a proper case, the courts may exercise their equity powers to affirmatively fashion an interest in the owner's land which will protect the encroacher's use." (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749,

22

764-765 (*Hirshfield*).) That interest commonly is referred to as an equitable easement. (*Shoen*, *supra*, 237 Cal.App.4th at pp. 19-20; *Tashakori*, *supra*, 196 Cal.App.4th at pp. 1008-1009.)

For a trial court to exercise its discretion to deny an injunction and grant an equitable easement, "three factors must be present. First, the defendant must be innocent. That is, his or her encroachment must not be willful or negligent. The court should consider the parties' conduct to determine who is responsible for the dispute. Second, unless the rights of the public would be harmed, the court should grant the injunction if the plaintiff 'will suffer irreparable injury . . . regardless of the injury to defendant.' Third, the hardship to the defendant from granting the injunction "must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. . . .'" (*Hirshfield*, *supra*, 91 Cal.App.4th at p. 759, italics omitted.) "Unless all three prerequisites are established, a court lacks the discretion to grant an equitable easement." (*Shoen*, *supra*, 237 Cal.App.4th at p. 19.)

"Overarching the analysis is the principle that since the defendant is the trespasser, he or she is the wrongdoer; therefore, 'doubtful cases should be decided in favor of the plaintiff.'" (*Hirshfield*, *supra*, 91 Cal.App.4th at p. 759; see *Linthicum*, *supra*, 175 Cal.App.4th at p. 265.) Moreover, "courts approach the issuance of equitable easements with '[a]n abundance of caution.'" (*Shoen*, *supra*, 237 Cal.App.4th at p. 21.) When courts compare the hardships or conveniences, the scales "begin tipped in favor of the property owner due to the owner's substantial interest in exclusive use of her property arising solely from her ownership of her land." (*Shoen*, *supra*, 237 Cal.App.4th at p. 20.)

"'When the court finds . . . that the defendant was not innocent, it should grant an injunction [because an essential element for denying an injunction and establishing an equitable easement is missing]." (*Salazar*, *supra*, 245 Cal.App.4th at p. 649, quoting *Brown Derby*, *supra*, 61 Cal.2d at p. 858, italics omitted.) "The

23

defendant is not innocent if he wilfully encroaches on the plaintiff's land.  [Citations.]  To be wilful the defendant must not only know that he is building on the plaintiff's land, but act without a good faith belief that he has a right to do so."  (*Brown Derby*, *supra*, 61 Cal.2d at p. 859.)  "Where the conduct is willful, it may be presumed that a defendant acted with full knowledge of the plaintiff's rights ""'and with an understanding of the consequences which might ensue. . . .'"""  (*Salazar*, *supra*, 245 Cal.App.4th at p. 649.)  "The question whether the defendant's conduct is so egregious as to be willful or whether the quantum of the defendant's negligence is so great as to justify an injunction is a matter best left to the sound discretion of the trial court."  (*Linthicum*, *supra*, 175 Cal.App.4th at p. 267.)  "We review the trial court's application of this doctrine for an abuse of discretion."  (*Shoen*, *supra*, 237 Cal.App.4th at p. 20.)

Here, the trial court refused to grant the McMullins an equitable easement, and instead issued an injunction for the removal of the retaining wall and restoration of the surrounding area.  The court found the McMullins were not innocent in constructing the wall on Nellie Gail's property, and therefore did not satisfy the first of the three requirements described above.  The record supports the court's ruling because substantial evidence supports the implied findings the McMullins knew where their rear property line was located, they intentionally did not identify it, and they began constructing the wall knowing they did not have the necessary approvals from Nellie Gail.

For example, the evidence showed Nellie Gail denied several applications by the McMullins seeking approval for the retaining wall and related improvements.  Each time, Nellie Gail told the McMullins in writing that any future application must include "a fully dimensioned site plan showing property lines," but the McMullins repeatedly submitted applications that failed to identify the rear property line.  Indeed, the McMullins never submitted a plan identifying the location of their rear property line.  The evidence also showed Donald prepared all of the plans the McMullins submitted to Nellie Gail, and each time he drew in a dashed, unlabeled line that Nellie Gail later

24

discovered was the rear property line and showed the retaining wall and other improvements were on Nellie Gail's property. Moreover, the applications repeatedly represented the retaining wall would be constructed in the same location as the original wrought iron fence, but the McMullins constructed the new retaining wall in a location that enclosed 2,000 square feet more than the original wrought iron fence. Finally, the trial court could rely on evidence that showed the McMullins constructed the retaining wall based on Erickson's oral and ambiguous statement that she thought the McMullins' plans had been approved, but the McMullins knew all of their previous plans for the retaining wall had been rejected in writing, they had not submitted any new plans since the last rejection, and a written approval from the Review Committee was required before construction could commence.

The McMullins point to the Review Committee's approval of the landscape screening for the retaining wall as a basis for the trial court to grant an equitable easement and deny injunctive relief. As explained above, however, that approval occurred after the McMullins knowingly constructed the wall on Nellie Gail's property without the Review Committee's approval. Moreover, the $20,000 cost for the screening portion of the project amounts to less than 12 percent of the total cost for the project. On these facts, we cannot say the trial court abused its discretion in concluding the McMullins were not innocent, and therefore were not entitled to an equitable easement.

The McMullins also argue Nellie Gail should have known the location of the property line between the two properties, and Nellie Gail acquiesced in the McMullins' construction of the retaining wall by failing to tell them to stop construction until the wall essentially was complete. These arguments, however, ignore the governing standard of review and improperly seek to reargue the evidence on appeal. As explained above, we review the trial court's decision to grant an injunction and deny an equitable easement under the abuse of discretion standard. (*Shoen*, *supra*, 237 Cal.App.4th at pp. 19-20; *Linthicum*, *supra*, 175 Cal.App.4th at p. 267.) The abuse of discretion

standard, however, includes a substantial evidence component: "We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred." (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544.)

When we review the record for substantial evidence, we do not determine whether substantial evidence supports the factual conclusions advanced by the McMullins. Rather, we review the entire record solely to determine whether substantial evidence supports the trial court's expressed and implied factual findings. If there is, our analysis ends; we may not substitute our deductions for those of the trial court. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429-430, fn. 5.) As explained above, we conclude substantial evidence supports the trial court's finding the McMullins were not innocent, and therefore were not entitled to an equitable easement.

In arguing monetary damages provided an adequate legal remedy that required the trial court to deny injunctive relief, the McMullins fail to recognize the foregoing authorities governed the court's decision whether to grant an injunction or require Nellie Gail to accept monetary damages instead. The McMullins rely on cases that discuss injunctive relief generally and involve different factual contexts. Reliance on these authorities is unavailing here because they do not address awarding injunctive relief when an adjoining property owner constructs an improvement that encroaches on his or her neighbor's property. Under the foregoing authorities, whether Nellie Gail suffered irreparable injury or monetary damages provided an adequate legal remedy is addressed by the second element of the governing standard, but the court need not decide that issue where, as here, the court determines the defendant was not innocent and therefore was ineligible for an equitable easement. (See *Brown Derby*, *supra*, 61 Cal.2d at p. 858 ["The rationale behind the rule is . . . to prevent a wrongdoer from gaining control of land merely by paying a penalty of damages"].)

26

Finally, the McMullins challenge the terms and scope of the trial court's injunction. First, they contend the injunction requires the city to issue permits for and approve the retaining wall's demolition, but there is no guarantee the city will approve the demolition or issue any permits. Second, the McMullins contend the injunction is overbroad because it authorizes Nellie Gail to address the grade and groundcover on the entirety of lot 274 and lot 273 at the McMullins' expense, but those lots total more than 20 acres and the McMullins' construction disturbed much less than one acre. Neither of these arguments invalidates the injunction or requires our intervention at this time.

We will not speculate on the city's position concerning the retaining wall's demolition and the trial court has the authority to modify the injunction if necessary to comply with the city's building code or other requirements. Moreover, the injunction essentially requires the wall to be removed in whatever manner the city requires. As for the McMullins' concern Nellie Gail will attempt to regrade and replant the entire 20 acres at the McMullins' expense, that too is based on nothing more than speculation. The trial court's judgment includes a procedure for the McMullins to challenge the reasonableness of the expenses Nellie Gail seeks to impose on them and they always may seek to modify the injunction if necessary.

E.     *This Court Lacks Jurisdiction to Review the Trial Court's Attorney Fees Award*

The McMullins contend the trial court erred in awarding Nellie Gail attorney fees under Civil Code section 5975, subdivision (c), because this lawsuit is not an action to enforce Nellie Gail's governing documents, but an action to enforce the quitclaim deed transferring lot 274 to Nellie Gail. We lack jurisdiction to review the attorney fees award because the McMullins failed to timely appeal the award. We therefore dismiss that portion of their appeal.

"'An appellate court has no jurisdiction to review an award of attorney fees made after entry of the judgment, unless the order is separately appealed.' [Citation.]

27

'[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal."'" (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171 (*Colony Hill*); see *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284; *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 (*DeZerega*).) Indeed, "'[w]hen a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals*: one from the final judgment, and a second from the postjudgment order.'" (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 222.) "'"[I]f a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review."'" (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693 (*Silver*).)

Here, the trial court entered judgment in Nellie Gail's favor in early November 2014. In mid-December, the court granted Nellie Gail's attorney fees motion and awarded Nellie Gail $187,000 in attorney fees and $10,000 in costs. The McMullins filed their notice of appeal on December 30, 2014, stating they appealed from "the judgment executed and filed on November 6, 2014." Their notice of appeal did not identify the trial court's ruling on Nellie Gail's attorney fees motion or otherwise suggest the McMullins were appealing the attorney fees award. On January 21, 2015, the trial court entered an "Amended Judgment," granting Nellie Gail's attorney fees motion and amending the original judgment to include the attorney fees and costs award. The amended judgment stated the judgment "shall remain in all other respects as originally entered, and as modified to date, and shall retain its original entry date of November 6, 2014." The McMullins did not file a separate notice of appeal to challenge either the trial court's ruling on the attorney fees motion or the amended judgment, and therefore we lack jurisdiction to review the attorney fees award.

28

Citing *Grant v. List & Lanthrop* (1992) 2 Cal.App.4th 993 (*Grant*), the McMullins contend their notice of appeal necessarily encompassed the trial court's attorney fees award because the original judgment awarded Nellie Gail attorney fees and left a blank space for the amount to be inserted later, and the amended judgment expressly amended the original judgment nunc pro tunc to include the amount of fees. The McMullins misconstrue *Grant* and the court's judgment and amended judgment.

In *Grant*, the Court of Appeal determined it had jurisdiction to decide an appeal challenging a postjudgment award of attorney fees where the judgment identified in the notice of appeal expressly awarded attorney fees to the prevailing party and merely left the determination of the amount for postjudgment proceedings. (*Grant*, *supra*, 2 Cal.App.4th at pp. 996-997.) The foregoing authorities emphasize *Grant* established a narrow exception to the rule requiring a separate notice of appeal for a postjudgment attorney fees award, and that exception applies solely when "the *entitlement* to fees [is] *adjudicated* by the original judgment, leaving only the issue of amount for further adjudication." (*DeZerega*, *supra*, 83 Cal.App.4th at p. 44; see *Silver*, *supra*, 190 Cal.App.4th at p. 692; *Colony Hill*, *supra*, 143 Cal.App.4th at p. 1172.)

In *Silver*, for example, the appellant sought to challenge a postjudgment attorney fees award on his appeal from the underlying judgment that stated attorney fees were awarded to the respondent and left a blank space for the amount of fees to be inserted later. (*Silver*, *supra*, 190 Cal.App.4th at pp. 690-691.) The Court of Appeal concluded it lacked jurisdiction to review the attorney fees award because the trial court made the award after entry of judgment and the appellant did not file a separate notice of appeal challenging the award. Although the judgment stated fees were awarded and left a blank space for the amount, the *Silver* court conclude *Grant* did not apply because the record showed the trial court determined both entitlement to and the amount of fees in postjudgment proceedings. (*Silver*, at pp. 691-692.)

29

Here, the original judgment similarly stated Nellie Gail shall recover its attorney fees and left a blank space for the amount to be inserted later, but the record shows the trial court made no determination regarding attorney fees before entering judgment, and determined both Nellie Gail's entitlement to and the amount of fees after entry of judgment. *Grant* therefore does not apply.

Contrary to the McMullins' contention, the trial court's amended judgment did not amend the original judgment nunc pro tunc and thereby bring the attorney fees award within the scope of their notice of appeal. Although Nellie Gail's attorney fees motion requested that the trial court amend the original judgment nunc pro tunc to include the fees award, neither the trial court's ruling nor the amended judgment stated the original judgment was amended nunc pro tunc. Rather, the amended judgment simply stated the original judgment was amended to include the attorney fees and costs award and the original judgment shall retain its original entry date.

More importantly, a trial court's authority to amend its judgment nunc pro tunc is limited to correcting clerical errors in the judgment. (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 185-186; *Lang v. Superior Court* (1961) 198 Cal.App.2d 16, 17-18.) Amending a judgment to include an award of attorney fees and costs when the court determined both the entitlement to and amount of fees after entry of judgment is not an amendment to correct a clerical error. Indeed, the Rule of Court addressing postjudgment awards of costs, including attorney fees, directs the court clerk to enter the award on the judgment. It does not authorize the court or clerk to amend the judgment nunc pro tunc. (Cal. Rule of Court, rule 3.1700(b)(4).) If a judgment could be amended nunc pro tunc to include a postjudgment attorney fees award, an appellant would never have to file a separate appeal from a postjudgment order granting attorney fees, but that is contrary to the foregoing authorities. (Cf. *Colony Hill*, *supra*, 143 Cal.App.4th at p. 1172.)

30

Finally, the McMullins contend we must liberally construe their notice of appeal to encompass the trial court's postjudgment attorney fees award. No so. The *Colony Hill* court rejected this same argument: "'The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders. [Citation.] "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment [or order] being appealed."'" (*Colony Hill*, *supra*, 143 Cal.App.4th at p. 1172; see *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47.) The McMullins' notice of appeal unmistakably stated they appealed from the trial court's November 6, 2014 judgment, and nothing else.

III

DISPOSITION

The judgment is affirmed. The purported appeal from the trial court's order awarding attorney fees and costs is dismissed for lack of jurisdiction. Nellie Gail shall recover its costs on appeal.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

THOMPSON, J.

31

Filed 10/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NELLIE GAIL RANCH OWNERS ASSOCIATION,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>      v.<br><br>DONALD G. McMULLIN et al.,<br><br>    Defendants, Cross-complainants and Appellants. | G051244<br><br>(Super. Ct. No. 30-2013-00653834)<br><br>ORDER (1) MODIFYING OPINION, (2) DENYING REHEARING, AND (3) CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It hereby is ordered that the opinion filed in the above-entitled matter on October 3, 2016, is hereby MODIFIED as follows:

1. On page 2, the first sentence of the second paragraph, beginning with "First, the McMullins contend," delete the words "and implement" between the words "develop" and "a landscaping," and delete the word "help" between the words "plan to" and "screen," so the sentence reads:

First, the McMullins contend Nellie Gail was equitably estopped to bring this quiet title action because it told the McMullins it would not pursue construction of the wall as a violation of the governing declaration of covenants, conditions, and restrictions (CC&R's) and instructed the McMullins to work with Nellie Gail's architect to develop a landscaping, irrigation, and drainage plan to screen the wall from view.

2.     On page 3, the second sentence of the second paragraph, beginning with "A property owner generally," delete the word "favor" between the words "greatly" and "the encroacher" and replace it with the word "favors," so the sentence reads:

A property owner generally is entitled to a mandatory injunction requiring an adjacent owner to remove an encroachment, but a trial court has discretion to deny an injunction and grant an equitable easement if the encroacher acted innocently and the balancing of the hardships greatly favors the encroacher.

3.     On page 4, the first sentence of the third paragraph, beginning with "The McMullins' backyard," delete the word "the" between the words "because of" and "sloping nature" and replace it with the words "their property's," and also delete the words "of their property" at the end of the sentence, so the sentence reads:

The McMullins' backyard has three retaining walls used to provide level, useable space because of their property's sloping nature.

4.     On page 4, the first sentence of the fourth paragraph, beginning with "Nellie Gail's CC&R's," delete the word "all" between the words "required" and "homeowners," so the sentence reads:

Nellie Gail's CC&R's and its Architectural Review Committee Guidelines required homeowners to obtain written approval from the Architectural Review Committee (Review Committee) before constructing or making significant alterations to any improvements on their property.

2

5. On page 5, the first sentence of the second full paragraph, beginning with "Two weeks later," delete the word "resubmitted" between the words "prepared and" and "an application" and replace it with the word "submitted," and also delete the word "an" between the words "resubmitted' and "application" and replace it with the words "a new," so the sentence reads:

Two weeks later, Donald prepared and submitted a new application with a revised, more detailed site plan.

6. On page 6, the third sentence of the second full paragraph, beginning with "Cynthia asked Erickson to double check," delete the word "were" between the words "they" and "approved" at the end of the sentence and replace it with the words "had been," so the sentence reads:

Cynthia asked Erickson to double check her information, and after looking on Nellie Gail's computer system, Erickson again told Cynthia she did not need to submit the plans because they had been approved.

7. On page 7, the fifth sentence of the first paragraph, beginning with "In confirming the McMullins had an approval," delete the words "some approval" at the end of the sentence and replace them with the words "an approval for some work," so the sentence reads:

In confirming the McMullins had an approval, Hinkle did not look at the plans or determine the type of work the McMullins were authorized to perform; he simply confirmed they had obtained an approval for some work.

8. On page 8, the second sentence of the first full paragraph, beginning with "Nellie Gail informed the McMullins," delete the word "their" between the words "McMullins" and "architect" and replace it with the word "its," so the sentence reads:

3

Nellie Gail informed the McMullins its architect would inspect the wall and the McMullins should submit an application and detailed plans to the Review Committee for possible approval.

9. On page 9, the last sentence of the partial paragraph at the top of the page, beginning with "On December 9, 2009," delete the word "help" between the words "plan to" and "screen," so the sentence reads:

On December 9, 2009, Nellie Gail sent the McMullins a letter informing them of the board's vote and instructing them to meet with Nellie Gail's architect to finalize a landscaping, irrigation, and drainage plan to screen the wall.

10. On page 10, the second sentence of the first full paragraph, beginning with "Nellie Gail's surveyor completed," delete the word "survey" between the words "completed his" and "in March" and replace it with the word "investigation," so the sentence reads:

Nellie Gail's surveyor completed his investigation in March 2011, and determined the original six-foot retaining wall was constructed on the property line and the new retaining wall and improvements were built almost entirely on Nellie Gail's property.

11. On page 10, the last sentence of footnote no. 2, beginning with "We therefore refer," delete the word "only" between the words "lot 274" and "for ease" and insert the word "only" between the words "refer" and "to lot 274," so the sentence reads:

We therefore refer only to lot 274 for ease of reference.

12. On page 11, the first sentence of the first paragraph, beginning with "In June 2013," insert the word "to" between the words "name" and "ask," and insert the word "to" between the words "and" and "request," so the sentence reads:

In June 2013, Nellie Gail sued the McMullins to quiet title to the Disputed Property in its name, to ask for an injunction requiring the McMullins to

4

remove the retaining wall and all other improvements from the Disputed Property, and to request a declaratory judgment declaring the parties' rights and duties under the CC&R's.

13. On page 15, the second sentence of the first full paragraph, beginning with "This isolated utterance," delete the words "as part of an argument that" and replace them with the words "while arguing," so the sentence reads:

> This isolated utterance, however, is not sufficient to preserve the issue for appeal because the McMullins' counsel did not utter those words while arguing Nellie Gail was equitably estopped to assert a quiet title claim.

14. On page 15, the third sentence of the first full paragraph, beginning with "Indeed, it appears," delete the words "as though" between the words "appears" and "the McMullins' counsel," so the sentence reads:

> Indeed, it appears the McMullins' counsel may have misspoke by mentioning equitable estoppel because he uttered that phrase when urging the trial court to grant an equitable easement, which, as explained below, is a separate doctrine that allows a landowner who constructed an improvement on an adjacent owner's property to defeat that owner's injunction request based on a balancing of the hardships or conveniences.

15. On page 16, the first sentence of the first full paragraph, beginning with "As the basis for their equitable estoppel claim," insert the word "which" between the words "e-mail" and "informing," delete the word "informing" and replace it with the word "informed," and delete the word "instructing" between the words "and" and "the McMullins" and replace it with the word "instructed," so the sentence reads:

> As the basis for their equitable estoppel claim, the McMullins cite Nellie Gail's December 2009 letter and January 2010 e-mail, which informed the McMullins the board of directors decided not to pursue the unauthorized construction of the retaining wall and related improvements as a violation

5

of the CC&R's, and instructed the McMullins to work with Nellie Gail's architect to develop a landscaping plan to screen the wall from view.

16. On page 16, the last sentence of the first full paragraph, beginning with "The evidence simply is insufficient," delete the word "The" at the beginning of the sentence and replace it with the word "That," and delete the word "simply" between the words "evidence" and "is insufficient," so the sentence reads:

That evidence is insufficient to equitably estop Nellie Gail from bringing a quiet title claim as a matter of law.

17. On page 17, the fourth sentence of the first paragraph, beginning with "Moreover, the city later informed," delete the entire sentence and replace it with the following sentence:

Moreover, the city later informed both parties the wall was on Nellie Gail's property and it could not remain there without Nellie Gail's express approval.

18. On page 19, the last sentence of the partial paragraph at the top of the page, beginning with "A tax is assessed when," delete the word "all" between the words "listing" and "properties," so the sentence reads:

A tax is assessed when the county assessor prepares the annual roll listing properties subject to taxation and their assessed value.

19. On page 19, the last sentence of the third full paragraph, beginning with "This evidence, however," delete the words "is not sufficient" and replace them with the word "fails," and delete the word "McMullins" and replace it with the possessive "McMullins'" so the sentence reads:

This evidence, however, fails to meet the McMullins' burden to show no taxes were levied and assessed.

20. On page 20, the last sentence of the second paragraph, beginning with "Similarly, although the property tax statements," insert the word "tax" between the words "parcel, the" and "statements stated," so the sentence reads:

> Similarly, although the property tax statements showed Nellie Gail was not billed for any property taxes on lot 274, and did not identify a specific value for that parcel, the tax statements stated, "common area values separately assessed."

21. On page 25, the last partial sentence on the bottom of the page that continues on page 26, beginning with "The abuse of discretion standard," delete the word "however" and the surround commas, so the sentence reads:

> The abuse of discretion standard includes a substantial evidence component:

22. On page 26, the third sentence of the second full paragraph, beginning with "Reliance on these authorities is unavailing," add the following new footnote no. 8 at the end of the sentence:

> [8.] The McMullins in their rehearing petition fault us for not discussing the following statement from *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342 (*Intel Corp.*): "Even in an action for trespass to real property, in which damage to the property is not an element of the cause of action, 'the extraordinary remedy of injunction" cannot be invoked without showing the likelihood of irreparable harm.'" (*Id.* at p. 1352.)
>
> *Intel Corp.* addressed whether a claim for trespass to chattels could be based on an employee's unauthorized use of a company's e-mail system. (*Intel Corp.*, *supra*, 30 Cal.4th at pp. 1346-1348.) It did not address an adjoining landowner's encroachment on his or her neighbor's property by constructing an improvement. The quote on which the McMullins rely is merely dictum from the court's response to an argument

7

that actual injury was not an element of a claim for trespass to chattels when the only remedy sought is injunctive relief.  (*Id*. at pp. 1351-1352.)  Moreover, the McMullins fail to recognize the quote on which they rely addresses a trespass in general, which may include simple entry onto another's land, but the cases discussed above address the more specific situation of a landowner encroaching on his or her neighbor's property by constructing an improvement, not merely entering upon the property.

23.     On page 27, the first sentence of the second paragraph, beginning with "We will not speculate," insert a "." after the word "demolition," delete the word "and," and capitalize the word "the" between the words "demolition" and "trial court," so the sentence becomes two sentences and reads:

> We will not speculate on the city's position concerning the retaining wall's demolition.  The trial court has the authority to modify the injunction if necessary to comply with the city's building code or other requirements.

24.     On page 27, the last sentence of the second paragraph, beginning with "The trial court's judgment includes," delete the word "always," so the sentence reads:

> The trial court's judgment includes a procedure for the McMullins to challenge the reasonableness of the expenses Nellie Gail seeks to impose on them and they may seek to modify the injunction if necessary.

25.     On page 29, the final sentence of the third paragraph, beginning with "Although the judgment stated," delete the word "conclude" between the words "court" and "*Grant*" and replace it with the word "concluded," so the sentence reads:

> Although the judgment stated fees were awarded and left a blank space for the amount, the *Silver* court concluded *Grant* did not apply because the record showed the trial court determined both entitlement to and the amount of fees in postjudgment proceedings.

8

26. On page 31, the second sentence of the first paragraph, which reads "No so," replace the word "No" with the word "Not," so the sentence reads:

Not so.

These modifications do not change the judgment.

The rehearing petition appellants Donald G. McMullin and Cynthia Jensen-McMullin filed is DENIED.

Neuland, Whitney & Michael, APC, Adams Stirling, Community Legal Advisors Inc., and Epstein Grinnell & Howell APC have requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

THOMPSON, J.

9