Filed 1/27/23  Mitchell v. Mitchell CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES MITCHELL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>META J. MITCHELL,<br><br>        Respondent. | A164780<br><br>   (San Francisco City<br>& County<br>     Super. Ct. No.<br>PTR08291187) |

Appellant James Mitchell is one of four siblings who were beneficiaries of their late father's family trust.  At least some of the siblings (whether appellant was among them is unclear from the record) objected to their father's surviving wife (their stepmother) receiving any of the assets.  That dispute was resolved by way of an agreement that resulted, among other things, in separate trusts being established for the four sibling beneficiaries, with their grandmother serving as trustee of the trusts.

Within the next several years disputes arose between three of the siblings (apparently not including appellant) and their grandmother as to the management of certain assets of the family and beneficiary trusts, which included shares of stock in a company operating the Mitchell Brothers/O'Farrell Theater.  In December 2009, the parties to this dispute entered into an agreement that provided, among other things, for distribution of the assets in each of the beneficiary trusts to the beneficiaries and required

1

the trustee to prepare an accounting for each of these trusts. An accounting was duly prepared, and in 2010 the three beneficiaries received their share of trust assets. Appellant's beneficiary trust remained as it was, with his grandmother continuing as trustee. This appears to have been due to the fact appellant was facing criminal prosecution for the murder of his girlfriend and dependency issues regarding their daughter.

More than a decade later, in January 2020, appellant, who had been convicted and incarcerated since 2011, filed a petition to compel an accounting of the family trust. Six months later, the probate court granted the petition. Six months after that, and no accounting having been filed, appellant filed a second petition in January 2021 for breach of trust, surcharge, and final distribution.

The attorney who had represented the trustees of the family trust and the beneficiary trusts through resolution of the family disputes recounted above, responded with a request to be relieved as counsel of record on the ground the only surviving trustee, appellant's grandmother, was suffering from dementia and had no recollection about the management of the trusts, and he had had no dealings with her or the other beneficiaries in the years following the distributions from their trusts. This precipitated a new order by the court, directing counsel to prepare an "informal" accounting and continuing counsel's motion to withdraw.

Counsel duly prepared an "informal" accounting and a detailed, supporting declaration explaining that appellant's share of the trust assets had long ago been fully expended on defense costs. Appellant objected to both the "informal" accounting and counsel's declaration.

The court continued all matters—appellant's petition for breach of trust, surcharge, and final distribution, his objection to and motion to strike

2

the "informal" accounting, and counsel's supporting declaration, and counsel's motion to withdraw—to a single hearing date. Following the hearing, at which both appellant's counsel and counsel for the surviving trustee appeared, the court took the matter under submission and subsequently issued a written order. The court overruled appellant's objections and denied his motion to strike, accepted the informal accounting, and denied appellant's petition, finding there "is no residue to be distributed" to appellant. The court also granted counsel's motion to withdraw as attorney of record for the remaining trustee.

Appellant now claims the probate court was "bias[ed]" against him and advances two arguments in this regard: (1) he claims the court "enabled" counsel for the surviving trustee to commit "contempt" and (2) the court's order denying his petition was the "product of an *ex parte* communication" with that attorney. Appellant's appeal is frivolous. The truncated record he has supplied provides no basis whatsoever for the charge of bias he has leveled against the probate court.

## BACKGROUND

We recount here the facts and procedural history shown by appellant's appendix and the clerk's register of actions which appellant was required to, but did not, include in his appendix in violation of the California Rules of Court (Cal. Rules of Court, rules 8.122(b)(F) & 8.124(b)(1)(A)), but which we judicially notice.[1] (Evid. Code, §§ 452, subd. (d), 459.)

---

[1] The clerk's register reflects that appellant has been highly selective in the documents included in his appendix. The clerk's register is 21 pages in length, 12 pages of which chronicle efforts by appellant, commencing in 2018, to recover trust assets to which he claims he is entitled.

Appellant's father, also named James Mitchell, died unexpectedly in July 2007.[2] At least some of his adult children objected to his surviving spouse, Lisa Mitchell (the children's stepmother), receiving any share of his estate. The siblings' grandmother, Georgia Mitchell, who was a co-trustee of the "Jim Mitchell 1990 Family Trust," became the trustee of the beneficiary trusts.

In April 2008, the co-trustees of the family trust filed a petition for the confirmation of the successor co-trustees. The petition also sought confirmation that certain real property in San Francisco was included in the trust and identified the trust's other significant asset as 2,000 shares in the theater company which operated the Mitchell Brothers/O'Farrell theater. The probate court granted the petition, confirming the property as trust assets and confirming Georgia and John P. Morgan as co-trustees.

During the following year, a dispute arose between three of the children (apparently not including appellant) and Georgia over her exercise of the shares of stock she controlled. Georgia wanted to make changes in the management of the theater, where some of the adult children worked and which was being run by a longtime friend of the decedent in the face of very challenging legal and economic circumstances. Specifically, Georgia wanted to oust the current management team.

The three children sought a restraining order, an effort supported by James' surviving spouse, Lisa. The children and Lisa maintained Georgia was attempting to retaliate against current management because it had cut off the flow of checks she had been receiving from the business at the direction of her deceased son (and which she believed she should continue to

_____

[2] To avoid confusion, we refer to appellant as "appellant," and to other Mitchell family members by their first names.

4

receive for the rest of her life). They further claimed Georgia was angered by management's refusal to employ individuals from whom Georgia had been receiving advice and who would continue payments to her, but who had no qualifications to manage a theater business.

In December 2009, the parties reached a settlement of this dispute. Among other things, the settlement agreement provided for the distribution of the assets of each beneficiary's trust to the beneficiary, but with restrictions as to the use and exercise of their shares of stock of the theater company. The trustees were also to provide an accounting from October 2007 to December 2009. Appellant was not a signatory to the agreement, and his share of the family trust assets remained in his beneficiary trust of which Georgia remained the trustee.

The co-trustees duly filed a detailed accounting for the period October 2007 through March 2009, and the other three siblings received their share of the assets in late 2010.

The next document in appellant's appendix is his petition, filed in January 2020, to compel an accounting of the family trust. The probate court granted this petition in July and ordered the co-trustees, Georgia and Morgan, to provide an accounting for the time period January 2008 through July 2020.

Six months later and no accounting having been filed, appellant filed a second petition in January 2021 for "breach of trust, surcharge, and for final distribution." (Capitalization omitted.) Appellant alleged the co-trustees had failed to comply with the court's order to provide an accounting and that on contacting counsel of record for the co-trustees, Paul Melbostad, he was told the co-trustees had resigned and Lisa had been appointed successor trustee. Appellant further alleged his share of the trust assets was "at least $400,000,

not including the value of the [Cinema 7, Inc.] stock." He asserted the co-trustees and counsel had violated fiduciary duties owed him and asked that they be surcharged and that his share of the assets be distributed to him.

In his opening brief, appellant states the case was called on September 20, and at that time the court ordered Melbostad to provide an " 'informal' " accounting to appellant's counsel which was not to be filed with the court. Appellant's appendix contains no court record of this hearing. The register of actions indicates this was a status conference and, by that point, Melbostad had filed a motion to be relieved as counsel of record for the surviving trustee, Georgia.

In his motion to withdraw, Melbostad stated he had no way of communicating with Georgia as she now suffered from advanced dementia and had no recollection of ever having had anything to do with appellant's beneficiary trust. Melbostad had last spoken to her some 10 years earlier, at which time she told him all of appellant's share of the assets had been consumed in paying his defense costs. The other co-trustee, Morgan, had died. The register of actions indicates the court continued Melbostad's motion to withdraw.

The next document in appellant's appendix is entitled "Trust Accounting for the Period April 14, 2009 Through November 5, 2021." (Some capitalization omitted.) This identifies disbursements for criminal defense attorneys and for juvenile dependency proceedings, and the sources of the funds used to pay those expenditures, including the sale of a house that had been purchased for appellant by the trustee with his share of trust assets, and the sale of appellant's shares in the theater company to his siblings. It shows that as of March 2009, appellant's share of the trust assets was

6

approximately $261,000 and that that entire amount was expended on his criminal and dependency defense costs.

Melbostad also filed a lengthy and detailed declaration in support of the "informal" accounting. Among other things, Melbostad stated he had been the attorney for the co-trustees "through the time when all the remaining assets were distributed," he "had personal knowledge" of the facts recited in his declaration except where indicated, and he had had no contact with the co-trustees since around 2010 "when all the remaining assets" to which appellant was entitled "were disbursed and exhausted to pay the offices of three criminal defense attorneys." Melbostad personally spoke with these attorneys and also the attorney who represented appellant in the dependency proceeding involving his daughter. Melbostad submitted his own declaration in support of the "informal" accounting because it was impossible to obtain a verification from the only surviving trustee, Georgia, due to her severe impairment.

Appellant filed an objection to and motion to strike the "informal" accounting and Melbostad's declaration. He claimed these documents "were not filed in conformity with" the probate order's requiring an accounting and that statements in the documents were "irrelevant, false, and improper."

The next and final document in appellant's appendix is an order filed January 20, 2022, overruling appellant's objections to and denying his motion to strike the "informal" accounting and Melbostad's declaration, and denying his petition for breach of trust, surcharge, and final distribution of trust assets. What was apparently a proposed order submitted by Melbostad was interlineated and re-written by hand to state as follows:

> "The Petition for Breach of Trust, Surcharge, and for Final Distribution came on for hearing this date [January 20, 2022]. Peter Borenstein appeared for James Mitchell, petitioner, and Paul H. Melbostad

7

appeared as attorney of record for surviving Trustee, Georgia M. Mitchell.  The Court considered the informal Trust Accounting provided by Mr. Melbostad for the Period April 14, 2009 through November 5, 2021, Verified and Supported by a Declaration by him with supporting evidence attached, and heard, considered, and overruled the objections to that account raised by Mr. Borenstein.

"There is no residue to be distributed to James Mitchell.

"IT IS ORDERED that:

"The Petition of James R. Mitchell for breach of contract, surcharge, and for final distribution is Denied."

The court also issued an order relieving Melbostad as counsel of record.

## DISCUS SION

We commence our discussion by quoting from the "Introduction" of appellant's opening brief.  (Some capitalization omitted.)  Appellant asserts:

"In summarily denying the unopposed petition, the probate court failed to uphold its duty under the law:  The probate court never issued a notice of ruling to the parties and instead seems to have advised Mr. Melbostad of its decision in an *ex parte* communication, instructing him to lodge a proposed order[3] denying the petition, which it then signed on January 20, 2022.  (Appellant's Appendix 'AA' at p. 267.)  James was never served with the order denying his unopposed petition; it contains no legal reasoning and does not address James' petition for breach of trust or surcharge.  The probate court's failure to perform its duties demonstrates a prejudicial bias against James that has persisted throughout the entirety of these proceedings, making it impossible for him to obtain a fair hearing in the matter.  Given the apparent judicial misconduct that occurred in this case, this Court should reverse the order denying James' petition and enter a new and different order granting the petition and surcharging Respondents and Mr. Melbostad for the value they have been unable to account for since 2009 and close the trust after more than a decade of inactivity."

---

[3] Appellant here includes a footnote stating: "Mr. Melbostad originally drafted the order in opposition to another motion; he simply crossed out all of the typewritten text and scribbled the relevant portions in his own handwriting to lodge with the probate court."

Even the limited record appellant has provided squarely refutes or provides no substantiation whatsoever for the accusations appellant has leveled against the probate court.

To begin with, the court did not "summarily" deny his petition for breach of trust, surcharge, and final distribution. To the contrary, it continued to, and heard, on the same date all pending matters—appellant's petition, his objections to and motion to strike the "informal" accounting and Melbostad's declaration, and Melbostad's request to be relieved as counsel of record. Counsel for appellant and Melbostad both appeared at the hearing, and there is zero indication they were not able to fully present their arguments. Nor is there any indication appellant presented any evidence calling into question the substance of Melbostad's declaration as to the disposition of the trust assets. The court then took all of the matters under submission. With regards to appellant's petition, the court overruled his objections to and motion to strike the "informal" accounting and Melbostad's declaration, and credited Melbostad's declaration that all of appellant's share of the trust assets had long ago been exhausted to pay his legal defense costs, as the court expressly found there was "no residue to be distributed" to appellant. In short, the court did not "summarily" deny appellant's petition.

Nor is the court's order devoid of legal reasoning, as appellant claims. It is plainly apparent from the court's order that given the uncontroverted *facts*, the court denied his petition in its entirety if, for no other reason, than any supposed lack of notice or failure to provide an accounting had not harmed him in in any way since the entirety of his share of the estate had been expended for his benefit more than a decade earlier for defense costs.

9

(See *Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300-1302 (*Williamson*) [no evidence beneficiary was damaged by claimed breach of fiduciary duty].)

Furthermore, where, as here, no statement of decision was requested (appellant's appendix contains no document evidencing such a request), the trial court is not required to provide one, and the lack of any such request " 'has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. [Citations.] This doctrine "is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." ' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 996; see Prob. Code, § 1000 [rules of practice and procedure applicable to civil actions apply to proceedings under Probate Code unless otherwise stated].) We therefore presume the probate court made all findings required to support its denial of appellant's petition, including that the facts before the court did not establish an actionable breach of any fiduciary duty and therefore there was no basis for a surcharge. (See *Williamson, supra,* 7 Cal.App.5th at pp. 1300-1302.)

There is also no evidence in the record supporting appellant's accusation of an improper ex parte communication between the probate court and Melbostad.[4] What the record shows is that at some point—there is no

---

[4] In the two paragraphs of the argument section of his brief that he devotes to this claimed misfeasance, he goes even further and asserts "[t]he probate court and Mr. Melbostad did not even try to hide the fact of their collusion in denying the petition: Mr. Melbostad simply repurposed an order

indication when—Melbostad submitted a proposed order in connection with all the continued matters. This proposed order was entitled, "Order Allowing Informal Trust Accounting of Paul H. Melbostad For The Period April 14, 2009 Through November 5, 2021, Overruling Objections And Denying Motions to Strike And Petition For Surcharge et al of James R. Mitchell." As we have recited, this proposed order was largely interlineated and rewritten by hand. Appellant claims this is Melbostad's handwriting, but he points to no evidence that is so—all he cites to is the order itself. By all appearances, the order appears to have been interlineated and rewritten by the court. Appellant also cites no authority in support of his assertion that the court was required to issue a "notice of ruling" before issuing a written order overruling his objections to and motion to strike the "informal" accounting and Melbostad's declaration and denying his petition. And as for appellant's complaint that he was not served with a copy of the signed order by the clerk in accordance with the Rules of Court (Cal. Rules of Court, rule 3.1109(a)), it is clear appellant was not prejudiced thereby and obtained a copy of the order before his notice of appeal was filed six weeks later.

There is also zero support for appellant's claim that the probate court "enabled" Melbostad's supposed "contempt and knowing misrepresentations" and "allowed" him to "completely ignore" the court's order granting appellant's first petition and requiring that he prepare an accounting. It is true that Melbostad did not file an accounting as directed by the court's July 2020 order. Appellant did not then—or ever—ask the court to hold Melbostad in contempt. (See generally Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2022) Ch. 12-E, §§ 12:403 et seq. ["[o]n its own

---

he drafted previously, crossing out nearly all the typewritten passages and handwriting the relevant information for the probate court to sign."

motion, or on motion of any party, the court may cite any person before it for contempt"].) Instead, appellant filed a second petition, this one for breach of trust, surcharge, and distribution of the trust assets. Having not sought a citation of contempt, appellant is in no position to complain about what he now characterizes as egregious and blatant contempt.

Furthermore, what appellant's own appendix and the register of actions make clear is that after appellant filed his second petition, and in the face of new facts—i.e., the reasons why Melbostad moved to withdraw as counsel of record for the surviving trustee—the probate court issued a new order relieving Melbostad from preparing a formal accounting and directing him to prepare an "informal" accounting based on his own knowledge about the management and distribution of the trust assets. Such action was *well* within the authority of the court. The court was not, as appellant seems to insist, required to compel Melbostad to perform what was by then an impossible task or to concoct a "formal" accounting out of whole cloth.

Appellant's claim that the court "rewarded" Melbostad for his supposed "repeated perjury" and "verifiable lies" is also not supported by the record. Appellant claims that at a July 12, 2021, hearing Melbostad told the court Lisa had been appointed as "successor trustee." Since appellant did not designate a reporter's transcript or elect to prepare a settled statement, he does not supply a record citation to any document memorializing this asserted statement. Instead, he cites to a request for judicial notice of a notice submitted to the court *in 2010* in connection with the settlement of the dispute between his three siblings and Georgia. That notice, which was not prepared by Melbostad but by Lisa's attorney, indicates no action was then being taken as to the trustee for appellant's beneficiary trust. Appellant refers to an e-mail Melbostad sent to the probate court clerk in response to an

12

e-mail from the clerk that the court wanted Melbostad to appear "to clear up the ambiguity re the identity of the current trustee(s) and address the failure to provide an accounting as ordered by the court in 2020." In his responding e-mail, Melbostad stated one of the siblings had been appointed attorney-in-fact for Georgia "due to her incapacity," and also said that sibling had "informed me that John Hartog is representing Lisa Mitchell as the Trustee of the Trust." He added that he believed Lisa "would have the records of whatever extremely small balance might have been left" of appellant's share of the assets following payment of his defense costs, "when she [Lisa] took over as Trustee from Georgia." What this e-mail makes clear is that Melbostad was reciting what *he was told* by appellant's sibling who had been appointed Georgia's attorney-in-fact. By no stretch of the imagination does this establish that Melbostad engaged in "repeated perjury," let alone establish that the probate court was complicit in such conduct.

In any case, whatever Melbostad may have initially believed as to who the current trustee was, is wholly irrelevant. In his subsequent declaration in support of the "informal" accounting, he stated Georgia was the only surviving trustee, she was suffering from dementia, she had no recollection of the management of appellant's beneficiary trust, and she therefore could not supply a verification for the accounting. Appellant did not submit any evidence to the contrary, and as we have recited, the probate court credited Melbostad's declaration. Accordingly, appellant has not shown, and cannot show, how he was conceivably prejudiced by Melbostad's initial misunderstanding as to who the trustee was of a trust as to which he had had no dealings in over a decade. In short, appellant's assertion that he "has been unduly prejudiced by the probate court's bias despite Mr. Melbostad's ongoing contempt and dishonesty" is wholly without merit.

13

We close with an admonition we do not lightly make but are compelled to do so here given the vituperative tenor of appellant's brief and the nature of the accusations he has leveled against the probate court and opposing counsel. "[A]n opening brief is not an appropriate vehicle for an attorney to 'vent his spleen' . . . . This is because, once the brief is filed, both the opponent and the state must expend resources in defending against and processing the appeal. Thus, an unsupported appellate tirade is more than just words on paper; it represents a real cost to the opposing party and to the state." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32–33, fn. omitted; *id*. at p. 33 [awarding sanctions for frivolous arguments unsupported by the record made in an opening appellate brief].)

Further, "[d]isparaging the trial judge is a tactic that is not taken lightly by a reviewing court. Counsel better make sure he or she has the facts right before venturing into such dangerous territory because it is contemptuous for an attorney to make the unsupported assertion that the judge was 'act[ing] out of bias toward a party.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 422.)

Appellant's unwarranted attacks on the court and opposing counsel also reflect poorly on the profession. Impugning the character of opposing counsel is almost never appropriate, and in this case as we have noted, the charges were wholly unfounded. (See, e.g., *In re S.C.*, *supra*, 138 Cal.App.4th at p. 412 ["unwarranted personal attacks on the character or motives of the opposing party, counsel, or witnesses are inappropriate and may constitute misconduct"]; *Martinez v. Department of Transportation* (2015) 238 Cal.App.4th 559, 566 ["Attorneys are not to mount a personal attack on the opposing party even by insinuation."].)

It would be deeply disturbing if the lack of professionalism and respect reflected in counsel's conduct toward the probate court and opposing counsel were common among members of the bar. Based on our experience, it is not. For counsel's benefit, however, we repeat the admonition of the Board of Governors of the State Bar that "attorneys have an obligation to be professional with . . . other parties and counsel, [and] the courts. . . . This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution." (Cal. Attorney Guidelines of Civility and Professionalism (July 20, 2007) p. 3; *id.*, p. 5, § 4(c), (f) ["An attorney should not disparage the intelligence, integrity, ethics, morals or behavior of the court or other counsel, parties or participants when those characteristics are not at issue. [¶] . . . [¶] . . . An attorney should avoid hostile, demeaning or humiliating words."].)[5] The kind of conduct displayed in appellant's brief "not only disserves the individual involved, it demeans the profession as a whole and our system of justice." (*Id.,* p. 3.) Rather, counsel must "strive for the highest standards of attorney behavior to elevate and enhance our service to justice." (*Ibid.*)

We strongly admonish appellant's counsel to conduct himself in a more professional manner when appearing before this or any other court and note that such conduct in a future case may subject him to sanctions much harsher than this warning.

## DISPOSITION

The probate court's orders of January 20, 2022 are AFFIRMED.

---

[5] California Attorney Guidelines of Civility and Professionalism https://www.calbar.ca.gov/Portals/0/documents/ethics/Civility/Atty-Civility-Guide-Revised_Sept-2014.pdf [as of Jan. 27, 2023].

_____

Banke, J.

We concur:

_____

Margulies, Acting P.J.

_____

Devine, J.*

\*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A164780, *Mitchell v. Mitchell*