Filed 11/30/23  Drooyan v. Action Property Management Co. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JOHN N. DROOYAN, | B314211 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC694438) |
| v. | |
| ACTION PROPERTY MANAGEMENT COMPANY, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Richard L. Fruin, Judge.  Affirmed.

John N. Drooyan, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, and Daniel R. Velladao; Stratman & Williams-Abrego and Amy L. Powers for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff and appellant John N. Drooyan, the owner of a unit in a common interest development, filed this action against the development's community association, its board of directors, and its property manager. Drooyan alleged claims for breach of fiduciary duty, conversion, and violation of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act; Civ. Code, § 1788 et seq.). At a bench trial on Drooyan's claims, the trial court granted a defense motion for judgment under Code of Civil Procedure section 631.8, and following the entry of judgment, awarded attorney's fees to the defendants under the Davis-Stirling Common Interest Development Act (Davis-Stirling Act; Civ. Code, § 4000 et seq.). On appeal, Drooyan seeks to challenge both the judgment and the postjudgment award of attorney's fees. We affirm the judgment because Drooyan failed to establish that the evidence compelled a finding in his favor as a matter of law on any of his claims. We dismiss the purported appeal from the postjudgment order for attorney's fees for lack of jurisdiction because Drooyan did not file a timely appeal from that order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The parties

The Centre Street Lofts is a common interest development located in San Pedro, California. The development is managed by the Centre Street Lofts Community Association (Association) and the Association's board of directors (Board). Action Property Management Company, Inc. (Action) is the property manager for the Centre Street Lofts and handles the collection of the homeowners' association fees. Drooyan purchased a unit in the development in 2008, and was a member of the Board from 2010 through 2013.

2

## II. The construction defect lawsuit and settlement

In 2010, the Board hired the Miller Law Firm to represent the Association in connection with certain construction-related problems in the Centre Street Lofts. In 2011, the Miller Law Firm filed a construction defect lawsuit on behalf of the Association against the property developer. The case settled in late 2013 for $6.1 million, of which the Association received $3,439,521.

On November 7, 2013, the Miller Law Firm sent a letter to the Association's members to advise them that the lawsuit had settled. The letter provided that "[t]he settlement funds, less costs and attorney's fees, will be placed into an interest bearing separate account for making common area repairs and replenishing reserves." The letter further stated that "[t]he settlement funds are for the benefit of the Association, and no funds from this settlement will be disbursed to individual members."

On December 12, 2013, members of the Board, including Drooyan, held an executive session meeting with the Miller Law Firm about the settlement. Shortly after the meeting, Drooyan resigned from the Board. The following year, in October 2014, the Association received the settlement funds.

## III. The Board's postsettlement actions

The Centre Street Lofts is governed by a declaration of covenants, conditions and restrictions (CC&Rs). The CC&Rs provide that the Association is responsible for managing and maintaining the common areas of the development. If any portion of the common areas is damaged or destroyed, the Association must restore that property to its former condition as promptly as possible. The CC&Rs also authorize the Association

3

to establish and collect regular and special assessments and late payment penalties for delinquent assessments. Assessments are delinquent if not paid within 15 days after the date set by the Association. Any money paid to the Association must be deposited into an operating fund, reserve fund, or other fund established by the Association, and must be used solely for the common benefit of the owners.

At the end of 2015, the Board increased the homeowners' association fees. In a December 2015 e-mail to the property manager and the Board, Drooyan objected to the fee increase, stating: "This increase is inexplicable to me since after Centre Street received the $3.4 million lawsuit settlement funds, the [B]oard discussed with the Miller [L]aw [F]irm whether the funds from the lawsuit could be used to reimburse the HOA for past expenditures to repair the gates and hot water system, and we were advised by the Miller [L]aw [F]irm that YES—the HOA could be reimbursed for the many thousands of dollars that were expended by the HOA for the repairs . . . . To the best of my knowledge this has not been done."

Drooyan later presented the Board with an unfiled class action complaint, and requested that the Board participate in a mediation with the homeowners. In a series of letters sent to Drooyan in early 2016, the Association's legal counsel, David Swedelson, disputed Drooyan's claim that the Board was mismanaging the settlement funds. While Swedelson acknowledged that the cost of certain prior repairs totaling approximately $200,000 was a source of damages claimed in the construction defect lawsuit, he stated that the Board never promised to use the settlement funds to reimburse the homeowners for those costs. Swedelson also explained that the

4

Board was in the process of repairing a number of construction defects in the common areas of the development, and needed to ensure there were sufficient funds in the Association's reconstruction account to make those repairs. Swedelson further noted that the Board previously transferred a portion of the settlement funds to the Association's general account, and would likely transfer additional funds to the reserve account to be available for future common area repairs if necessary. Although Swedelson initially indicated that mediation was "likely a good idea," he later informed Drooyan that the Board would not agree to a mediation because it acted appropriately.

The homeowners' association fees for the Centre Street Lofts are due on the first of each month, and the Association charges a late fee if a payment is received after the 15th of the month. At the end of 2016, the Board increased the late fee from $10 to 10 percent of the payment due.

## IV. The current lawsuit

On February 16, 2018, Drooyan filed an individual lawsuit against Action, the Association, and the Board (collectively, Defendants). The operative complaint alleged causes of action for violation of the Rosenthal Act, conversion, and breach of fiduciary duty.

The first cause of action for violation of the Rosenthal Act was brought against Action only. Drooyan alleged that Action violated the Rosenthal Act by improperly charging him late fees in 2016 and 2017. Drooyan alleged that the late fees were not reasonably related to the costs incurred by Action in collecting the homeowners' association fees, and violated the Association's CC&Rs.

The second cause of action for conversion was asserted against the Association and the Board. Drooyan alleged that the Board used the homeowners' association fees to pay for $207,847.97 in temporary repairs through August 2012, and to pay for additional repairs from August 2012 to November 2013. Drooyan alleged that the Board refused to reimburse him for his proportionate share of these repair costs from the settlement funds that the Association received in the construction defect lawsuit. Drooyan alleged that, by improperly retaining the settlement funds, the Association and the Board committed the tort of conversion.

The third cause of action for breach of fiduciary duty was also asserted against the Association and the Board. Drooyan alleged that the Association and the Board owed him a fiduciary duty to properly manage the settlement funds, and that they breached that duty by refusing to use the settlement funds, either to reimburse Drooyan for his share of the temporary repair costs or to avoid an increase in the homeowners' association fees. In addition, Drooyan alleged that the Association and the Board breached their fiduciary duty by increasing the late fee for delinquent homeowners' association fees without providing proper notice of the increase.

## V.  **Drooyan's evidence at trial**

The trial court held a bench trial on Drooyan's claims in May 2021. Drooyan represented himself at trial and testified on his own behalf.

With respect to his claims arising out of the Board's management of the construction defect settlement funds, Drooyan testified that, during the litigation, temporary repairs were made to the common areas of the development, and the

6

homeowners' association fees were increased to cover the cost of those repairs. As of August 2012, the cost of the repairs was $207,847.97. Between August 2012 and October 2014, an additional $80,022.08 was spent on the repairs. Drooyan claimed that he was entitled to recover 1.16 percent of the total cost of the repairs as his proportionate share of the settlement funds, which according to his calculation, was $3,346.55.

Drooyan testified that he believed he had a right to this monetary recovery based on statements made by Tom Miller of the Miller Law Firm, the Association's counsel in the construction defect lawsuit. According to Drooyan, Miller told the Board at the December 12, 2013 executive session meeting that the costs of the temporary repairs "[were] damages in the settlement for which homeowners would be . . . reimbursed." Drooyan did not regard Miller's statement to mean that the homeowners would be paid directly, but rather that the settlement funds would be used to reimburse the Association's general account in order to reduce the homeowners' association fees. In a January 15, 2016 e-mail to Drooyan, Miller confirmed that these prior repair costs were claimed as damages in the construction defect lawsuit, although Miller also noted in the e-mail that no specific instructions were made as to how the settlement funds were to be spent.

On cross-examination, Drooyan acknowledged that Miller expressly told the Association's members in a November 7, 2013 letter that none of the settlement funds would be distributed to the individual homeowners. Drooyan testified that he "never . . . sought to have homeowners be paid specifically from the settlement," and that he "just wanted to see that . . . the reconstruction settlement funds went into the general fund through reduced H.O.A. fees." He further testified, "It's not that .

7

. . I'm owed money directly from the settlement, but . . . my belief is that . . . the H.O.A. fees should have been reduced in accordance with the temporary repair costs that were part of the settlement."

During Drooyan's testimony, the trial court noted that he had not shown that the Board took any action to deprive the homeowners of the value of the settlement funds. In response, Drooyan stated, "[I]t wasn't what the Board did as much as how they did it. When we wanted to mediate with them and talk to them about these repairs that were not being done . . . and this whole issue of trying to reimburse homeowners who were hurting financially, they did not want to talk." Drooyan agreed with the court that the Board was allowed to make decisions that it believed were in the best interests of the development. Drooyan stated that his concern was that "when things were not being done . . . and issues were arising where homeowners' interests were at stake, they didn't want to have a neutral to talk to them about it, they didn't want to talk to the homeowners."

Drooyan testified that the Board also breached its fiduciary duty by failing to complete the repairs in a timely manner. The trial court pointed out that Drooyan's complaint contained no allegations based on the timeliness of the repairs, and that his breach of fiduciary duty claim was based solely on the Board's alleged conduct in managing the settlement funds and increasing the late fee charged for delinquent homeowners' association fees. Drooyan acknowledged that his complaint did not include a claim based on the Board's failure to make timely repairs, and that he never sought leave to amend the complaint to add such a claim. When defense counsel later sought to cross-examine Drooyan on the subject of untimely repairs, he declined to answer, stating:

8

"It's not in the complaint, so I don't think we need to talk about it." Drooyan added, "That's all history—Okay? . . . [¶] . . . That's not part of this case anymore."

With respect to his claims arising out of the Board's increase in the late fee charged for delinquent homeowners' association fee payments, Drooyan testified that he did not receive written notice of the increase. On cross-examination, Drooyan was shown a notice to the owners of a December 28, 2016 meeting to decide whether to increase the late fee from $10 to 10 percent. Drooyan stated that he did not recall seeing the notice, and that he first learned of the late fee increase when he received the payment vouchers for his 2017 homeowners' association fees. While he acknowledged that the Davis-Stirling Act allowed the Board to increase the late fee, Drooyan stated that his issue was that the fee was being paid to Action, not the Association. Drooyan also testified that he believed a 400 to 500 percent increase in the late fee was "against the homeowners' interests," and that the Board "can approve it, yes; but that doesn't make it right."

With respect to his claim against Action for its collection of the late fees, Drooyan testified that he was charged a late fee in July 2016 and every month in 2017. Drooyan further testified that the late fees accrued interest at 12 percent per year, and continued to appear on his monthly homeowners' association fee statements until he paid off a lien that had been placed on his property. The trial court admitted into evidence certain late fee notices that Drooyan received from Action, which reflected that he was charged a $10 late fee on July 18, 2016, a $23.08 late fee on February 16, 2017, and a $34.63 late fee on March 16, 2017. The court also requested that Drooyan and defense counsel each

9

submit a chart summarizing the late fees that were imposed during the relevant time period. After reviewing the charts, the court found that the one submitted by Drooyan failed to show in a comprehensible form what amounts in late fees were charged to Drooyan and when those charges were imposed. At trial, the parties stipulated that "[l]ate fees are determined by when the fees are received and not when they are mailed."

Drooyan called two other witnesses to testify in his case-in-chief. Kevin Franklin was the head of a general contracting firm that worked with the Miller Law Firm on the construction defect litigation. Franklin testified that his firm conducted testing, made temporary repairs, and later prepared an analysis of the repairs that should be prioritized following the settlement. Rebecca Johns was a member of the Association's Board. She testified that the increase in the late fee from $10 to 10 percent of the monthly homeowners' association fee was made in reliance on the advice of Action.

## VI. Defendants' motion for judgment

At the completion of Drooyan's case-in-chief, Defendants moved for judgment under Code of Civil Procedure section 631.8. Defense counsel argued that Drooyan failed to meet his burden of proof as to each cause of action. The trial court indicated that it was inclined to grant the motion, but first asked Drooyan whether he had any argument in opposition. After Drooyan stated that he did not, the court granted the motion.

On May 24, 2021, the trial court entered judgment in favor of Defendants on each of Drooyan's claims. In the judgment, the court stated that, following Drooyan's case-in-chief, it did not find a breach of fiduciary duty, conversion, or violation of the Rosenthal Act.

10

## VII. Defendants' postjudgment motion for attorney's fees

On June 7, 2021, Defendants filed a motion for attorney's fees. Defendants argued that the Association and the Board were entitled to attorney's fees under the Davis-Stirling Act, and that Action was entitled to attorney's fees under the Rosenthal Act. Defendants sought to recover approximately $47,000 in attorney's fees for the work performed by two law firms: (1) Stratman, Schwartz & Williams-Abrego, defense counsel in the litigation, and (2) Swedelson Gottlieb, the Association's personal counsel.

Drooyan opposed the motion for attorney's fees. Among other arguments, Drooyan contended that Action was not entitled to attorney's fees because there was no showing that Drooyan acted in bad faith in pursuing the Rosenthal Act claim; Defendants could not recover attorney's fees for the work performed by Swedelson Gottlieb prior to the filing of the action; and Defendants failed to prove that the amount of attorney's fees sought was necessary and reasonable.

On July 12, 2021, the trial court granted in part and denied in part the motion for attorney's fees. The court denied the request for attorney's fees under the Rosenthal Act because Defendants failed to show that Drooyan pursued his claim against Action in bad faith. The court also denied the request for attorney's fees for the work performed by Swedelson Gottlieb. The court granted the request for attorney's fees for the work performed by Stratman, Schwartz & Williams-Abrego, but reduced the amount of fees awarded to $15,500 because Defendants were only entitled to reasonable attorney's fees for the claims arising under the Davis-Stirling Act.

Drooyan filed a timely appeal from the May 24, 2021 judgment. He did not file an appeal from the July 12, 2021

11

postjudgment order granting Defendants' motion for attorney's fees. We accordingly requested the parties submit supplemental briefs addressing whether there is appellate jurisdiction to review the attorney's fees award. Both parties filed supplemental briefs.

## DISCUSSION

## I.    Appeal from the judgment

On appeal, Drooyan challenges the trial court's ruling granting Defendants' motion for judgment under Code of Civil Procedure section 631.8. Drooyan contends the evidence at trial was insufficient to support a judgment in favor of Defendants on each of his three causes of action. We conclude the trial court did not err in granting the motion for judgment.

### A.    Governing law

Code of Civil Procedure section 631.8 provides, in relevant part, that "[a]fter a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, . . . or may decline to render any judgment until the close of all the evidence." (*Id.*, subd. (a).)

" ' "The purpose of Code of Civil Procedure section 631.8 is 'to enable the [trial] court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact.' " ' " (*Orange County Water Dist. v. MAG Aerospace Industries, Inc.* (2017) 12 Cal.App.5th 229, 239 (*Orange County Water Dist.*).) "A motion for judgment is to be granted if the court concludes, after 'weighing the evidence at the close of the

12

plaintiff's case,' that 'the plaintiff has failed to sustain the burden of proof.' " (*Hart v. Darwish* (2017) 12 Cal.App.5th 218, 227.) In making its ruling, " 'the trial court assesses witness credibility and resolves conflicts in the evidence.' " (*Jones v. Quality Coast, Inc.* (2021) 69 Cal.App.5th 766, 772.) The court "may disbelieve the plaintiff's evidence, draw adverse (rather than favorable) inferences therefrom, and credit contrary evidence introduced through cross-examination or otherwise." (*Orange County Water Dist.*, at p. 239.)

In general, the substantial evidence standard of review applies to a judgment granted under Code of Civil Procedure section 631.8. (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 732.) "This standard, however, can be 'misleading' in cases when the judgment for one party is based on the other party's failure to satisfy a burden of proof." (*Ibid.*) Therefore, " '[w]hen the trier of fact has expressly or implicitly concluded that the party with the burden of proof failed to carry that burden and that party appeals . . . the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Id.* at p. 733.) "This is 'an onerous standard' [citation] and one that is 'almost impossible' for a losing plaintiff to meet, because unless the trier of fact made specific factual findings in favor of the losing plaintiff, we presume the trier of fact concluded that 'plaintiff's evidence lacks sufficient weight and credibility to carry the burden of proof.' " (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.)

13

## B. Breach of fiduciary duty

In his cause of action for breach of fiduciary duty, Drooyan alleged that the Association and the Board breached a fiduciary duty owed to him by (1) failing to use a portion of the settlement funds from the construction defect lawsuit to reimburse Drooyan for his share of the temporary repair costs, and (2) increasing the late fee charged for delinquent homeowners' association fees from $10 to 10 percent of the payment due without proper notice.

To prevail on a claim for breach of fiduciary duty, the plaintiff must prove the existence of a fiduciary relationship, breach of a fiduciary duty, and damages. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) " '[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law.' " (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 386.) Directors on the board of a homeowner or community association generally have a fiduciary duty to exercise due care and undivided loyalty for the interests of the association. (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 513.)

Under the business judgment rule, however, judicial deference must be given to board decisionmaking when the owners in common interest developments seek to litigate business decisions that are entrusted to the discretion of their associations' board of directors. (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 251.) " 'Generally, courts will uphold decisions made by the governing board . . . so long as they represent good faith efforts to further the purposes of the common interest development, are consistent

with the development's governing documents, and comply with public policy.' " (*Id.* at p. 265.)  Thus, where the board, "upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise." (*Ibid.*)

The Centre Street Lofts is a common interest development governed by the Davis-Stirling Act (Civ. Code, § 4000 et seq.). As a common interest development, it is managed by a homeowners' association that is responsible for, among other duties, repairing, replacing, and maintaining the common areas of the development (*id.*, § 4775, subd. (a)), levying regular and special assessments on the owners sufficient to perform its obligations (*id.*, § 5600), and levying late payment penalties on the owners for delinquent assessments (*id.*, § 5650).  Consistent with the Davis-Stirling Act, the Centre Street Lofts' CC&Rs charge the Association with the management, maintenance, and restoration of the common areas.  The CC&Rs also entrust the Association with the authority to establish and collect assessments and late fee penalties, and to manage the operating, reserve, and other funds for the common benefit of the owners.

Drooyan argues the Association and the Board breached their fiduciary duty because, once the Association received the settlement funds from the construction defect lawsuit, the Board should have reduced the homeowners' association fees in order to reimburse the owners for the cost of temporary repairs made during the litigation.  Drooyan does not claim the Board was

15

legally obligated to disperse the settlement funds in this manner under the Davis-Stirling Act, the Association's CC&Rs, or any other statute or contract. Rather, he contends the owners were entitled to reimbursement because the repair costs were claimed as damages in the construction defect lawsuit. Even if the repair costs were damages, however, the evidence did not establish that the terms of the settlement required the Association to reimburse the owners for any such costs. To the contrary, the evidence showed that, shortly after the settlement, the Association's counsel advised the owners that the settlement funds would be "placed into an interest bearing separate account for making common area repairs and replenishing reserves," and that "no funds from this settlement will be disbursed to individual members." The evidence also showed that the Board established a separate reconstruction account for the settlement funds, and then used the funds to make repairs to construction defects in the common areas of the development. The trial court reasonably could find that the Board acted within the scope of its authority under the CC&Rs and governing statutes, and made a good faith decision to apply the settlement funds to common area repairs rather than reduced homeowners' fees.

Drooyan also asserts the Association and the Board breached their fiduciary duty by increasing the late fee imposed for delinquent homeowners' association fees from $10 to 10 percent of the payment due. Drooyan does not dispute that the Board had the authority under the Davis-Stirling Act and the Association's CC&Rs to make this increase. Indeed, the Davis-Stirling Act provides that, unless the CC&Rs state otherwise, homeowner assessments "are delinquent 15 days after they become due," in which case the association may recover "[a] late

16

charge not exceeding 10 percent of the delinquent assessment or ten dollars ($10), whichever is greater," unless the CC&Rs specify a smaller amount. (Civ. Code, § 5650, subd. (b)(2).) The CC&Rs likewise provide that the assessments are delinquent if not paid within 15 days after the date set by the Association, and that the Association may require the delinquent owner to pay a late fee. The evidence reflected that the Board decided to increase the late fee at the end of 2016 in reliance on advice provided by the property manager. While Drooyan testified that he had no recollection of receiving notice of the meeting where the increase was approved, the trial court was entitled to disbelieve this testimony. In any event, none of the evidence showed that the Board made the increase decision in bad faith or outside the scope of its broad discretion.

On appeal, Drooyan argues the Association and the Board further breached their fiduciary duty by failing to make timely repairs after receiving the settlement funds, and by refusing to mediate with the homeowners about those delays. As the trial court noted during Drooyan's testimony, the operative complaint contained no allegations based on the timeliness of the repairs. It also did not include any allegations about the Board's refusal to mediate. When questioned by the trial court, Drooyan admitted that his complaint did not allege untimely repairs as a basis for his breach of fiduciary duty claim, and that he never sought leave to amend to add such a claim. Drooyan offered no further evidence on the subject, and he conceded on cross-examination that his allegations about the timeliness of the repairs were "not part of this case anymore." Under these circumstances, Drooyan waived any claim on appeal that the Association or the Board breached a fiduciary duty based on

17

conduct not alleged in the complaint.  (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 285–286; *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1166–1167.)

Because Drooyan cannot establish that the evidence at trial compelled a finding in his favor as a matter of law, the trial court did not err in granting judgment for the Association and the Board on Drooyan's breach of fiduciary duty claim.

### C.    Conversion

In his cause of action for conversion, Drooyan alleged that the Association and the Board committed the tort of conversion by improperly retaining the portion of the settlement funds that represented his pro rata share of the homeowners' association fees that were used to pay for the prior repairs.  At trial, Drooyan testified that he calculated his share to be $3,346.55, and that he was seeking this amount as damages for conversion.

" ' "Conversion is the wrongful exercise of dominion over the property of another." ' "  (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.)  The elements of a cause of action for conversion are:  (1) the plaintiff's ownership or right to possession of personal property, (2) the defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (3) resulting damages.  (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.)  To prevail on conversion claim, "the plaintiff must prove an ' " 'ownership or right to possession of the property at the time of the conversion.' " ' "  (*Nelson v. Tucker Ellis LLP* (2020) 48 Cal.App.5th 827, 845.)

Drooyan contends the trial court erred in granting judgment in favor of the Association and the Board on his conversion claim, because there was no evidence that he and the

18

other owners lacked a monetary interest in the repair costs that were claimed as damages in the construction defect lawsuit. However, as the party with the burden of proof at trial, Drooyan was required to present evidence to establish his ownership or right to possession of the property.  The trial court reasonably could have concluded that Drooyan failed to meet that burden because he did not prove he had a possessory right to any of the settlement funds that the Association received in the construction defect lawsuit.  Instead, the evidence presented at trial showed that the settlement funds belonged to the Association, not the individual homeowners, and that the Board was responsible for managing those funds for the benefit of the Association and its members.  Drooyan also admitted he lacked an ownership or possessory interest in the settlement funds when he testified: "It's not that . . . I'm owed money directly from the settlement, but . . . my belief is that . . . the H.O.A. fees should have been reduced in accordance with the temporary repair costs that were part of the settlement."  On this record, the evidence did not, as a matter of law, compel a finding in Drooyan's favor on his cause of action for conversion.

### D. Violation of the Rosenthal Act

In his cause of action for violation of the Rosenthal Act (Civ. Code, § 1788 et seq.), Drooyan alleged that Action violated the statute by improperly charging him late fees on his monthly homeowners' association fees.

" 'The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." ' "  (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 77.)  It prohibits specified acts by debt collectors (Civ. Code, §§ 1788.10–1788.16), and requires

19

them to comply with provisions of the federal Fair Debt Collection Practices Act (FDCPA; 15 U.S.C. § 1692 et seq.). The FDCPA regulates the conduct of debt collectors by, among other acts, prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e), including a false representation of "the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)).

Drooyan argues Action falsely represented the character, amount, or legal status of a debt in violation of the Rosenthal Act by improperly charging him late fees despite his timely payment of his monthly homeowners' association fees. As discussed, the homeowners' association fees are due on the first day of the month, and are subject to a late fee if not paid within 15 days after they become due. At trial, the parties stipulated that "[l]ate fees are determined by when the fees are received and not when they are mailed."

The evidence admitted by the trial court showed that Drooyan was charged a late fee for the homeowners' association fees that he paid in July 2016, February 2017, and March 2017. While Drooyan claims these late fees were improper because he timely mailed his homeowners' association fee payments prior to the 15th of each month, none of the evidence admitted at trial established when the payments were actually received by Action. The chart that Drooyan submitted to the court to support his Rosenthal Act claim also did not show when his 2016 or 2017 homeowners' association fee payments were received.

On appeal, Drooyan relies on various exhibits that he offered at trial to demonstrate that he paid his homeowners' association fees prior to the 15th of each month. The trial court

20

did not admit any of these exhibits, however, and Drooyan does not raise any argument on appeal regarding the exclusion of this evidence. Because none of the admitted evidence established the dates on which Drooyan's homeowners' association fees were received, he failed to meet his burden of proving a violation of the Rosenthal Act. The trial court accordingly did not err in granting judgment for Action on the Rosenthal Act claim.

## II. Purported appeal from the postjudgment award of attorney's fees

Drooyan asserts the trial court erred in awarding attorney's fees to Defendants. After considering the parties' supplemental briefs, we conclude we lack jurisdiction to review the trial court's postjudgment order granting Defendants' motion for attorney's fees because Drooyan did not file a timely appeal from that order.

The timely filing of a notice of appeal is a prerequisite to appellate jurisdiction. (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.) Unless a notice of appeal is timely filed, " 'an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal.' " (*Ibid*.) Thus, " ' "[i]f a judgment or order is appealable, an aggrieved party *must* file a *timely* appeal or forever *lose* the opportunity to obtain appellate review." ' " (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 693 (*Silver*).)

With respect to a postjudgment award of attorney's fees, " ' "[a]n appellate court has no jurisdiction to review an award of attorney fees made after entry of the judgment, unless the order is separately appealed." [Citation.] " '[W]here several judgments and/or orders occurring close in time are separately appealable (e.g., judgment and order awarding attorney fees), each appealable judgment and order must be expressly specified—in

21

either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal.' " ' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1007–1008 (*Nellie*); accord, *Silver*, *supra*, 190 Cal.App.4th at p. 693.)

Here, the trial court entered judgment in Defendants' favor on May 24, 2021, and granted in part Defendants' postjudgment motion for attorney's fees on July 12, 2021. In ruling on the motion for attorney's fees, the trial court decided both Defendants' entitlement to attorney's fees and the amount of fees to be awarded. On July 19, 2021, Drooyan filed a single notice of appeal in which he expressly stated that he was appealing from the "judgment after court trial" entered on "May 24, 2021." The notice of appeal did not reference the trial court's July 12, 2021 ruling on the motion for attorney's fees, or otherwise indicate that Drooyan intended to appeal the attorney's fees award. Because Drooyan did not file a separate appeal to challenge the trial court's order granting the motion for attorney's fees, we have no jurisdiction to review that order. (See *Nellie*, *supra*, 4 Cal.App.5th at pp. 1008–1010; *Silver*, *supra*, 190 Cal.App.4th at pp. 692–694.)

In his supplemental brief, Drooyan concedes he did not file a notice of appeal from the postjudgment award of attorney's fees. He nevertheless contends that we have jurisdiction to review the attorney's fees award under the collateral order doctrine. The collateral order doctrine is a recognized exception to the "one final judgment rule," and provides that an interim order which is collateral to the subject matter of the litigation is appealable under certain limited circumstances. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) In this case, however, there is no question that the trial court's postjudgment order granting

22

Defendants' motion for attorney's fees is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(2) [appeal may be taken from an order made after a judgment]; *Silver, supra*, 190 Cal.App.4th at p. 693 [postjudgment order which awards or denies costs or attorney's fees is separately appealable].) Rather, the question is whether Drooyan filed a timely appeal from that order, which is a prerequisite to appellate jurisdiction. Here, Drooyan's July 19, 2021 notice of appeal specified the judgment only, and omitted any reference to the postjudgment order for attorney's fees. We therefore lack jurisdiction to consider Drooyan's challenge to the attorney's fees award.

## DISPOSITION

The judgment is affirmed. The purported appeal from the postjudgment order awarding attorney's fees to Respondents is dismissed. Respondents shall recover their costs on appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.


23