Filed 8/22/25  Conservatorship of the Person and Estate of Martha A. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person and Estate of Martha A. <br><br> DAVID SHAVER., as Guardian, etc., <br><br>   Plaintiff and Appellant, <br><br>      v. <br><br> JODEE S., <br><br>   Objector and Respondent. | G063364 <br><br> (Super. Ct. No. 30-2019-01066588) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Ebrahim Baytieh, Judge. Affirmed.

Bunt & Shaver and David N. Shaver for Plaintiff and Appellant.

Jodee S., in pro. per., for Objector and Respondent.

\*　　　\*　　　\*

In this complex conservatorship case, this appeal presents a fairly straightforward set of issues. David Shaver, an attorney, was appointed as the guardian ad litem for the conservatee, Martha A. (Marty),[1] in 2019. At the termination of the conservatorship, Shaver filed a petition requesting fees of $44,360 and reimbursement of costs of $7,679.23. The court agreed with the objections of one of Marty's daughters and awarded $8,100 in fees, concluding Shaver's services were not in Marty's best interests. Although Shaver advances numerous theories on appeal, none of them establish a legal error or abuse of discretion on the trial court's part. Accordingly, we affirm the order.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case has an extensive history. In the interests of brevity, we omit many facts that are not directly relevant to the limited issues on appeal.

Marty was born in 1941 and passed away on June 30, 2022. On April 23, 2019, Richard A., Marty's son, filed a petition for conservatorship. He later submitted a capacity declaration by Eileen Kang, Ph.D., a psychologist, which stated that Marty "presents with dementia which includes executive dysfunction, memory impairment, and language dysfunction."

On May 6, the court appointed Richard as temporary conservator of Marty's person and Richard Huntington, a private professional fiduciary, as temporary conservator of her estate. This appointment was issued over Marty's objection. The primary assets of the conservatorship estate were three lots in Orange, California. An inventory and appraisal totaled over $9

---

[1] We use first names to refer to the conservatee and her family members.

2

million, but Marty also had numerous loans and other liabilities, as well as code compliance issues.

A court investigator issued a confidential report. The report noted the investigator agreed with Kang's capacity declaration and found Marty had mental deficits. The investigator stated cognitive decline impaired Marty's ability to make informed medical decisions, handle her own financial affairs, and provide for her basic needs. A medical doctor diagnosed Marty with dementia around the same time. Other assessments found Marty had mild cognitive impairment.

One of Marty's daughters, Judy E., filed a competing petition for appointment as conservator of Marty's person on June 18, and objected to her brother Richard's petition. On July 3, Judy filed an amended petition nominating herself as conservator of Marty's estate as well as her person. The court appointed the public defender's office to represent Marty.

Judy and Richard objected to each other's petitions. Marty filed a written objection to Richard's petition, and "adamantly objected," according to the trial court, to the appointment of Richard or Huntington as conservator. Marty asserted her ability to care for herself and make her own medical decisions, but also stated her preference to have Judy appointed if the court decided a conservatorship was warranted.

On August 14, 2019, at the request of Huntington's attorney, the court appointed attorney Shaver as Marty's guardian ad litem. Huntington's attorney argued that the public defender representing Marty was advocating for what Marty wanted, rather than what, in Huntington's opinion, was in her best interest.

In August, Huntington filed a voluntary bankruptcy petition on behalf of Marty's estate.

Around August 30, the parties reached a settlement agreement in which all interested parties agreed that Judy and Huntington would be appointed as co-conservators of Marty's person, and Huntington would be appointed as the conservator of her estate. This agreement, however, did not last long. Judy filed multiple ex parte petitions to suspend Huntington, and Huntington contended that Judy entered into the settlement agreement in bad faith. The ex parte petitions were eventually denied. The public defender, on Marty's behalf, joined in Judy's petition to remove Huntington. In November, Judy filed a petition to remove Huntington from both his roles as conservator.

In March 2020, Shaver submitted a brief report to the court summarizing what he had done thus far. He summarized the various reports regarding Marty's mental capacity and discussed conservatorship assets.

In December 2020, Judy filed a petition to move Marty to Texas. Richard filed an objection. In January, Judy filed a petition to terminate the conservatorship. A separate psychological assessment indicated the psychologist's belief that Marty's previous exams had been hindered by vision and hearing impairments, and he assessed Marty as having mild cognitive impairment. He believed Marty had the capacity to select her own agent for healthcare and finances.

On March 5, 2021, the court approved a stipulated order that appeared to resolve the pending petitions. According to the court, "The stipulated order put in place a court approved procedure intended to allow Marty . . . to relocate to Texas and end this case once and for all. The stipulated order also put in place a procedure for attempting to resolve the various claims for compensation and reimbursement from Marty['s] estate,

4

and for Mr. Huntington's resignation and replacement as conservator Marty . . . . Unfortunately, but not surprisingly, the litigation[] continued."

In March 2021, Judy dismissed her 2019 petition to remove Huntington. She also filed a petition to appoint Mark McKibben, a private professional fiduciary, as the successor conservator of Marty's estate. In June, Huntington filed a petition seeking to resign as co-conservator of Marty's person. Judy agreed. The court noted that "However, and even though both sides wanted the same outcome in connection with this *Ex Parte* petition, the parties, again not surprisingly but sadly, could not resist attacking each other during the litigation of the *Ex Parte* petition. . . . In granting this *Ex Parte* petition on June 14, 2021, the court noted regarding the disputed facts listed in the *Ex Parte* petition and response thereto: 'All such disputed facts are immaterial to the relief requested.'" McKibben was appointed.

An Evidence Code section 730 exam was performed by Dr. Sara N. Mourra. Mourra opined: "[Marty] lacks the capacity to manage her health care and to make and carry out health care decisions in her own rational self-interest." Her current condition was best described as "impaired" and Marty continued to require a conservatorship of both the person and estate.

Litigation continued. Some of Marty's property was sold, subject to the bankruptcy court's approval. Judy sought a substituted judgment to create a trust and pour-over will that essentially disinherited Richard. Shaver objected.

Judy subsequently sought to establish a guardianship for Marty in Texas. The Texas court denied the petition, but issued an order creating a management trust for Marty.

5

On June 2, 2022, Shaver filed a petition requesting fees of $44,360 and reimbursement of costs of $7,679.23. The costs included Dr. Mourra's advanced fees of $7,212.25. Marty passed away on June 30.

Jodee S., another of Marty's daughters, filed "verified" objections to Shaver's fee petition.[2] Jodee, who represented herself, is the only objector and respondent appearing in this appeal.[3] In the Statement of Facts section of her objections, she referred to a wide-ranging conspiracy to "abuse process and strip Marty . . . of her due process rights and unlawfully force her into a conservatorship . . . and then conspiring further to cover up the initial conspiracy." She claimed that Marty did not have dementia, and the evidence that she did was "false evidence fabricated" by various individuals and then relied upon by Shaver, among others. She also alleged that the conservatorship was a fraud perpetrated for the purpose of looting Marty's assets. With respect to Shaver, she claimed he did "nothing" in Marty's best interests, and did not meet with her until six months after his appointment as guardian ad litem. Jodee claimed Shaver only visited Marty because of the persistence of Marty's daughters. She complained about his billed time on an almost line by line basis. The objections included a verification under penalty of perjury.

Shaver filed a reply, denying Jodee's contentions and justifying his billed time on the case.

---

[2] Judy also filed objections.

[3] Jodee's brief on appeal includes myriad assertions of fact that lack citations to the record. We disregard all such assertions. (Cal. Rules of Court, rule 8.204(a)(1)(C); see *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 28; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

The parties stipulated that the fee petition would be submitted on the pleadings and oral arguments. Pursuant to the stipulation, the court heard from the parties but did not receive sworn witness testimony. Shaver argued at some length and answered questions from the court. Jodee argued at length in a manner largely consistent with her objections. She spoke of the alleged conspiracy to strip Marty of her rights and force her into a conservatorship, asserting her mother did not have dementia. The evidence of dementia, she claimed, was false and fabricated, and the purpose of the conspiracy was looting Marty's assets. She stated Shaver's fee request was "exorbitant" and that he had been minimally involved in the case. She discussed many details, again, largely in line with her written objections.

On May 31, the court mailed to the parties a copy of an approximately five-page document entitled: "Statement to the court May 25, 2023 of Jodee S[.]" In this statement, she purported to respond to arguments made during the hearing. They were largely consistent with her previous statements about the conservatorship, although they included different details. This statement was unsigned.

In due course, the court issued a lengthy statement of decision, with approximately seven pages devoted to Shaver's fee petition. With respect to Shaver's fees, the court found many of the objections meritorious. The court took particular note of the fact that Shaver only had two in-person meetings with Marty, the first on February 28, 2020, more than six months after he was appointed as her guardian ad litem. The court was persuaded, based on Shaver's apparent confusion about relevant dates, that more than 18 months after he was appointed, at the time of their second meeting, he still had questions about Marty's capacity and medical condition. The court found Shaver's claimed fees and costs prior to meeting Marty were not

7

reasonable or in Marty's best interests. These fees amounted to $9,680.00 for 58 tasks. The court found that "(1) most if not all of these 58 tasks are not more important than meeting with Marty. . . , and (2) most if not all of these 58 tasks are not sufficiently reasonably beneficial to a determination of what is in Marty['s] best interest PRIOR to Mr. Shaver actually meeting Marty . . . ." The court noted it was not stating that meeting the conservatee first was required in every case, but "based on the totality of all the circumstances in this case, including the contentious nature . . . and the vehement objection by Marty" it was vital for Shaver to meet with her and assess her condition independently before taking other steps.

The court also considered arguments by Judy and Jodee that Shaver appeared to be aligned with Huntington and his attorneys during hearings. They claimed they had to "beg" Shaver to meet Marty. The court found the entirety of the record, including Shaver's own statements, supported the assertions of the objectors. Shaver admitted to receiving e-mails from Jodee and Judy and failing to reply to them. During oral argument, Shaver stated there had been "confusion" about his role and his focus had been "toward the conservatorship . . . with the least restrictive option for [Marty]." The court found this assertion unpersuasive in light of Shaver's failure to meet with her as the most "reasonable, and easiest, starting point to determine what is and what is not the least restrictive mean[s] in connection with the conservatorship," particularly in light of Marty and Judy's objections. The court also found evidence that Shaver had failed to adequately review certain filings.

The court stated the evidence "paints a disappointing and regretful picture of a [Shaver] more aligned with the conservator than with the best interests of his charge." The court additionally found that Shaver

8

billed for all work as done by himself at the rate of $400 an hour, "including what is best described as very low level legal/administrative review of simple documents," including proofs of service, notices of hearing, simple minute orders, and preparing simple letters. In reaching its decision, the court considered "the reasonableness and fairness of authorizing $400 per hour for such administrative type of work."

The court listed in table form what work it found "reasonably and fairly billed" and allowed a total of $8,100. The court also approved the requested amount of advanced costs, and entered an order accordingly.

Shaver now appeals the amount of his fees. While we have reviewed the record carefully and read Shaver's briefs in their entirety, he raises numerous extraneous "issues" that we need not discuss. These include the status of a "gun safe" that he concedes did "not appear to be a factor in the court's decision to reduce [his] fees," and something that happened with a third party during a lunch hour. We are uncertain why Shaver felt it was necessary to raise these points, but in any event, Shaver is reminded that this court's jurisdiction relates only to the order before us.

DISCUSSION

I.

STANDARD OF REVIEW

Despite Shaver's suggestion to the contrary, the standard of review for an award of statutory fees is abuse of discretion. (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 234.) This is true regardless of whether the appeal is from an application for fees in the first instance, or an appeal from the denial of a motion for new trial on the issue. With respect to factual findings, there is no abuse of discretion when the findings are supported by

9

substantial evidence. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1005–1006.)

Under the governing principles of appellate review, we presume the trial court's order is correct. The appellant must affirmatively demonstrate error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; *Guardianship of K.S.* (2009) 177 Cal.App.4th 1525, 1529–1530.)

II.

QUASI-JUDICIAL IMMUNITY

Shaver first contends that because guardians ad litem enjoy quasi-judicial immunity, that protection should include within its scope objections to fee requests based on discretionary decisions within the guardian ad litem's scope and authority. In other words, if a guardian ad litem does any work within the normal scope of a guardian ad litem's responsibility, their ability to collect what he or she believes is a "reasonable" fee for that work is beyond question. In short, the court cannot question the appropriateness of the work itself. This argument, however, is without merit.

There is no question that guardians ad litem enjoy quasi-judicial immunity and the litigation privilege. (See *McClintock v. West* (2013) 219 Cal.App.4th 540, 550-551, 553–554.) Shaver apparently believes this immunity strips away the right of other interested parties to contest his fee request, or for the court to scrutinize it. Shaver offers no legal authority for this leap of law and logic, and we find no basis for it either.

Shaver, however, admits that the court may review a fee request to determine "the reasonableness of the fees incurred." Despite Shaver's claim to the contrary, that is precisely what the court did, in great detail. While Shaver may believe he "attended a very important meeting with counsel and the bankruptcy attorney on August 29, 2019, for which he billed

10

3.8 hours"—the court is entitled to decide such an expenditure was unreasonable. An expenditure can be unreasonable for more than one reason, including the lack of benefit to the conservatee. Shaver simply offers no authority for this novel theory limiting the scope of the court's reasonableness review. Under his theory, any expenditure even marginally "within his scope and authority" is beyond the court's review. We decline to adopt it.

III.

STANDARD OF PROOF

Shaver complains the court applied the wrong standard of proof to his fee petition—clear and convincing evidence rather than preponderance of the evidence. The court, however, made it clear in the statement of decision that it was doing no such thing. The court stated: "Having reviewed and considered all the available admissible evidence, the court is satisfied by clear and convincing evidence[8] that in this case, fees, and costs expended by the [Shaver] prior to actually meeting with Marty . . . are not just reasonable, or in the best interest of Marty . . . for purposes of the fee petition." Footnote eight stated: "This finding by clear and convincing evidence *is not intended to convey that Mr. Shaver was required to prove certain facts by clear and convincing evidence* to prevail on his fee petition. On the contrary, this use of the 'clear and convincing' level of proof is intended to convey the court's view of the strength of the evidence proving that Mr. Shaver's fee petition should be denied, as detailed in this Statement of Decision." (Italics added.)

While Shaver claims this "makes no sense," and is an acknowledgment by the court that it is using the wrong legal standard of proof, such an interpretation would require us to throw the ordinary rules of the English language and legal interpretation out of the window. The court, as it explicitly states, is using "clear and convincing" to convey the weight

11

and the strength of the evidence it found credible, not the legal standard required to prevail. We find no reason to doubt the court's word, and we reject Shaver's contention that the court used the wrong legal standard.

IV.

ARGUMENTS ARE NOT EVIDENCE

Shaver next argues that the court "treated oral argument of counsel and the parties as sworn testimony in this case." This is simply an assertion on Shaver's part, without evidence to support it. He does not provide specific examples of the facts improperly considered by the court. Accordingly, he fails to meet his burden to demonstrate error on appeal. (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492.)

Moreover, Shaver had notice of all of the arguments Jodee intended to make during closing argument, because her arguments substantially mirrored the arguments she offered in her written objections.[4] The key fact Jodee raised on which the court appeared to rely, Shaver's delay in meeting Marty, was first raised in Jodee's written objections. This was not a contested fact, and Shaver has never denied the truth of it. He stated the dates himself during argument. He cannot claim a lack of notice of due process when he was or should have been fully aware of the facts Jodee would raise during closing argument, as anything the court relied upon had been raised before.

---

[4] This fact is what distinguishes this case from our decision in the related appeal, *Conservatorship of Marty A.* (Aug. 22, 2025, G063437) [nonpub. opn.]. In that case, Jodee did not file any written objections to the declaration at issue.

Further, the court stated its decision was "Based on the entirety of the admissible evidence and information presented in this case, the review of all the documentary evidence, and considering Mr. Shaver's own statements during closing arguments . . . ." "[A]dmissible evidence" and arguments are separate categories of information, and the court is entitled to consider both.

We find no error.

## V.

### NO ABUSE OF DISCRETION

Finally, we conclude there was no abuse of discretion. While reasonable minds can differ as to whether Shaver should have waited for six months after his appointment to meet with Marty, and to engage in what he claims was thousands of dollars of work beforehand, it is not grounds to find an abuse of discretion. It was within the court's discretion to determine that Shaver's own evaluation of Marty's competence should have been the first step in determining her best interests. "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) The court's decision did not exceed the bounds of reason.

The court's other findings were supported by substantial evidence. Shaver claims the court "either did not read the entire court file or did not understand it" without evidence to support such a statement, which directly contradicted the court's statement on the matter. He also claims the court's stated "time line is incorrect and completely out of context" but does not explain what, exactly, is "incorrect." He takes issue with facts that court

13

did not explicitly mention, such as the investigator's report and the fact that the case settled, but again, the court does not need to discuss every fact in a lengthy record in order to have given that fact consideration. If Shaver contends a particular fact was misconstrued by the court, he does not explain how.

Instead, Shaver asserts that because of the potential settlement in August 2019, "there was no exigent or immediate need nor right for [him] to conduct [an] extensive interview of Marty . . . or the need for a conservatorship" before he actually did so. He is certainly entitled to that opinion, and he has every right to disagree with the court's finding on this point. But that does not establish an abuse of discretion. He provides a laundry list of his activities in 2019 and over and again contends "[t]he court makes no reference" to this fact or that, without regard to the lack of a requirement to do so in a statement of decision. In sum, Shaver has failed to meet the high bar to establish an abuse of discretion.

Given our decision on the merits, we need not take up Shaver's argument that his filing was timely.

## DISPOSITION

The order is affirmed. In the interests of justice, each party is to bear their own costs on appeal.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.